## State *vs.* J. K. Stone.

BENNINGTON,
*February,*
1834.

No person can keep an inn or house of entertainment, unless he is nominated by the authority of the town, and licensed by the court.

It is not necessary, to constitute a person a keeper of an inn or house of entertainment, that he should sell spirits or wine.

He incurs the penalty under the statute, if he, without license, does those things which are usually and commonly done by innkeepers for the entertainment of travellers though he should not keep spirits or wines.

A person cannot keep a house of public entertainment under a license to keep a victualling house.

Nor can he keep such a house, where the authority refuse or neglect to approbate a sufficient number of innkeepers for the accommodation of the public.

This was an indictment for keeping a house of public entertainment without a license. Plea, not guilty.

On the trial of the issue, the attorney for the state introduced testimony tending to show that during all the time named in the indictment, the respondent occupied a house in Manchester, where a tavern had formerly been kept, in which there was a bar, and to which there was a shed, trough or manger, and barns;—that he kept a sign in front of his house, on which are the words, "Boarding House by Stone;"—that he has had from ten to fifteen boarders through the past summer;—that travellers stopped there, to whom he sold victuals, hay and oats, as is customary in taverns, and lodged them over night, and received pay therefor;—that stages stop at his house for breakfast, and the passengers are provided with breakfast if they wish it;—that he received from travelers twenty-five cents a meal, and from passengers thirty-seven and a half cents for breakfast, but had not sold any ardent spirits or wine of any kind, but sold in the bar beer and cider;—and that the jail in Manchester is kept in the house, and that he boards some scholars who attend the "Burr Seminary." Also that the house and buildings are owned by Horatio Walker, and that said Walker owns all or a part of the stages which stop at said house;—that the barn and sheds are used to accommodate the stages and horses belonging to said Walker; and further that he entertains travelers and others in the same way as is usual and customary at taverns, except that he sold no spirits or wine.

The respondent then offered in evidence a license made in due form of law, and signed by a majority of the select men and civil authority of Manchester, under the statute law of this state, passed November 10, 1830, entitled, "An act regulating

BENNINGTON,
February,
1834.

State
vs.
Stone.

and licensing victualling houses;" to the admission of which the attorney for the state objected, and it was rejected by the court.

The respondent then offered to prove, that there was but one tavern in the village of Manchester—that stage passengers and others could not be accommodated there in such manner as they wished, except at Stone's—which was objected to by the attorney for the state, and by the court rejected.

The court charged the jury, that if they believed the facts as stated by the witnesses for the state, as before stated, they ought to find the respondent guilty on said indictment; but if they believed he had only kept a victualling house, (explaining to the jury what constituted keeping a victualling house or cellar, under the statute passed Nov. 30, 1830,) or had only kept a boarders' house for the accommodation of boarders, they would return a verdict of not guilty. The jury returned a verdict that the respondent was guilty of the offence charged in said indictment. To this charge the respondent made his exceptions, which were allowed and certified.

*Blackmer and Sargeant for respondent.*—1. The question whether Stone had kept a house of public entertainment or not, was a question of fact for the jury to decide; and we contend the court ought to have permitted the respondent to show his license, and then let the jury say whether he had exceeded the privileges given him by his license or not. A keeper of a victualling house has many privileges in common with the keeper of a tavern—viz :

2. He may sell victuals the same as a tavern keeper; and whether to stage passengers, or persons who travel on foot, or to persons who live in town or out, would make no difference; or whether he charged one price or another, would not affect the case.

3. Without a license he might sell hay or oats, by any quantity, to any person, whether stranger or not; and also had a right to let any person sleep in his house, whether stranger or not.

4. He kept no sign but that of " Boarding House by Stone," so that travelers and strangers would not stop unless they wanted board.

*Mr. Smith, appointed state's attorney for this cause, contra.*

The opinion of the court was pronounced by

BENNINGTON,
February,
1834.

State
vs.
Stone.

Williams, Ch. J.—The legislature have regulated the sub-
ject of keeping inns and houses of entertainment, both with a
view to revenue, and and also for the purpose of having suita-
ble persons, and none but such, engaged in that business. This
was necessary for the comfort and convenience of the traveler
or stranger, who for a time have to become inmates of their
houses. The selectmen and civil authority of the town must
in the first place nominate, and the county court are to license
such only as are nominated, and assess them, for the purpose
of revenue, such sums as they think proper, between one, and
thirty dollars. The persons thus licensed must provide suitable
refreshments, provisions and accommodations for travelers, put
up a sign, have a shed, &c. and have the exclusive privilege of
keeping such houses. It has been customary and usual to keep
spirits, wine, &c., but this is not required by the statute. To
prevent persons not licensed, and who pay nothing, from inter-
fering with the regular business of the innkeeper, and to pre-
vent improper persons from keeping houses of public entertain-
ment, the legislature have inflicted a penalty on any one, not
having a license to keep an inn or house of public entertain-
ment, who should presume to become a common innkeeper or
keeper of a house of public entertainment; and further, to
prevent any one, whether under the guise of an innkeeper or
otherwise, not licensed as aforesaid, from selling liquor, they
have also inflicted a penalty on any one who should publicly
or privately sell any liquors.

It is apparent that two distinct offences are contemplated and
guarded against by the statute; one, keeping a house of public en-
tertainment, or being a common innkeeper; another, the selling of
liquors, either publicly or privately, which was intended to be ex-
clusively the business of the innkeeper. Where an innkeeper has
been duly approbated and licensed, and paid his assessment, and is
engaged in his proper business, it equally interferes with that busi-
ness, if another person either keeps a house of public entertain-
ment or sells liquor in small quantities. And furthermore, without
such approbation and license, improper persons might keep a
house of public entertainment, which would be highly injurious to
the order and peace of a village or town; and travelers would also
be imposed upon, not having that guaranty for the integrity and
uprightness of their host which would be inferred from an appro-

BENNINGTON,
February,
1834.

State
vs.
Stone.

bation by the selectmen and civil authority of a town. The statute which was passed last fall, and which comes into operation the first day of April next, recognizes this distinction. Innkeepers under that statute must be approbated as before. If they sell liquors, they must pay an assessment of from three to fifty dollars; if they do not, they only pay twenty-five cents for their license. If it is asked, what is keeping an inn or house of entertainment, it will be readily answered by the common sense and understanding of every one. It is keeping a house, publicly, openly and notoriously, for the entertainment and accommodation of travelers and others, for a reward. In short, it is, in the quaint and expressive language commonly made use of, providing refreshment and entertainment for man and beast. On looking at this case, we learn that the respondent did every thing which is usually and commonly done by innkeepers, for the entertainment of travelers and others; that he had the custom, which is usually considered as the most profitable custom, to wit—the stages stopped and the passengers breakfasted at his house; that he had a sign, on which, however, were painted the words, " Boarding House ;" that he had a shed and bar appurtenant to the house, and for the accommodation of customers, as innkeepers use their sheds and bars. We can have no doubt that this constituted the offence charged in the indictment, if an inn or house of public entertainment can be kept without selling liquors. The testimony which was offered by the respondent, and excluded by the court, was certainly irrelevant. For what purpose could it have been necessary or proper for him to show, that he had a license for keeping a victualling house—a house kept for a purpose altogether different from an inn or house of entertainment, regulated upon different principles and for a different object? If the respondent had only kept a victualling house, whether with or without license, he could not have been found guilty under this indictment; and so the jury were instructed; and it would have been as proper to have introduced in evidence a license as a retailer or pedlar, as a license to keep a victualling house. It was not the subject of inquiry, whether the respondent was guilty or not guilty of an offence against the act regulating victualling houses. The county court, it seems, gave the jury instructions as to what constituted keeping a victualling house or cellar under the statute of Nov. 6, 1830, and no objections were made to their instructions in this particular; and

further instructed the jury, that if the respondent only kept a victualling house or boarding house, they must return a verdict of not guilty. The license offered was of no consequence, and was properly excluded from being given in evidence. Equally improper was the evidence offered as to there being but one tavern in Manchester. If the authority of the town did not correctly understand and do · their duty, it affords no excuse for a violation of the statute. For any thing which appears, the respondent was rightly convicted ·of the offence charged in the indictment, and judgment must be rendered on the verdict for the penalty incurred by the respondent; and as this case does not come within the provisions of the statute passed in ·November, 1830, the court can only sentence the respondent to pay one penalty of ten dollars.