LORINE ROBERTS, Respondent, *v.* CASE HOTEL COMPANY, INC., Appellant.

(Supreme Court, Appellate Term, First Department, March, 1919.)

Inns and innkeepers — who not liable as an innkeeper — apartment houses — when complaint dismissed.

> Defendant conducts in the city of New York a building constructed to serve as an ordinary apartment house which had not been altered to conform to the familiar plan of an hotel lay-out, although the house was designated on its billheads as "Hotel Schuyler Arms." It had a small entrance hall or lobby upon the street floor, at the rear end of which was a desk and a telephone switchboard. A register was kept. Tenants could do their own cooking in the kitchens connected with the apartments. There was a public restaurant in the building at which plaintiff, who was a tenant, with her companion and the other occupants of the building took occasional meals, the charges for which were added to the bills for the rent of the rooms, which bills were made out and paid weekly. The maid service, exclusive of kitchen or cooking service, was furnished by defendant. In an action to recover the value of a gown lost by plaintiff under circumstances that would render defendant liable if it were conducting an inn and plaintiff were a guest, *held,* that defendant was not an innkeeper and a judgment in favor of plaintiff will be reversed and the complaint dismissed.

31

Appellate Term, First Department, March, 1919.    [Vol. 106.

APPEAL by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, fifth district, in favor of the plaintiff, after trial by the court without a jury.

Louis Sachs, for appellant.

Milton W. Sametz, for respondent.

MULLAN, J. What is an inn? Given an inn, when is a person a guest of the innkeeper? The defendant company must have been an innkeeper, and the plaintiff must have been its guest, in the technical, common-law sense, or the judgment below cannot stand.

The books abound in definitions of inn and innkeeper, and courts and text-writers almost invariably go back to the same sources. *Calye's Case,* 8 Coke, 32; *Cross* v. *Andrews,* Cro. Eliz. 622; *Thompson* v. *Lacy,* 3 B. & Ald. 283; 5 Bac. Abr., Inns & Innkeepers. "An inn," says the writer in Cyc. (vol. 22, p. 1070), is "A house where a traveler is furnished, as a regular matter of business, with food and lodging while on his journey; or a house of entertainment for travelers;" and an innkeeper, says the same writer, is " a person who publicly professes that he keeps an inn, and will receive therein all travelers who are willing to pay an adequate price, and who come in a situation in which they are fit to be received."

"An inn," says First Judge Daly in *Cromwell* v. *Stephens,* 2 Daly, 15, 24, " is a house where all who conduct themselves properly, and who are able and ready to pay for their entertainment, are received, if there is accommodation for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied at a reasonable charge with their

meals, their lodging, and such services and attention as are necessarily incident to the use of the house as a temporary home.''

Innkeepers, like carriers, are the beneficiaries of special privilege, and the considerations of public policy that led to the creation of the ancient rule making them insurers of their guests against loss, unless caused by the negligence or fraud of the guest, or the act of God or the public enemy, remain unaffected by the changed conditions of modern life. *Hulett* v. *Swift,* 33 N. Y. 571; *Ingallsbee* v. *Wood,* Id. 577; *Mowers* v. *Fethers,* 61 id. 34; *Hancock* v. *Rand,* 94 id. 1. '' The liability of an innkeeper, as an insurer \* \* \* had its origin in an ancient custom of the realm, which fixed the correlative rights and obligations of the parties, by securing to the traveler a special remedy for his goods, and to the host a specific lien for his charges.'' *Ingallsbee* v. *Wood, supra,* 578. These unusual rights and obligations depend upon the technical relationship of host and guest, as it was understood and stated in the early days. '' Where he (the innkeeper) is not bound to receive and entertain the person as his guest, the strict rule of common-law liability for the preservation of his property does not obtain. The obligation to respond for injury to property, depends upon his duty to receive and entertain as an innkeeper, and they must stand or fall together.'' *Mowers* v. *Fethers, supra.* ''An innkeeper is subject to extraordinary liability, and a person claiming to enforce such liability must show a case clear, beyond all reasonable doubt.'' *Ingalsbee* v. *Wood,* 36 Barb. 455.

All the authorities are agreed that to be an innkeeper one must in some fashion make profession of keeping open house for all decent-appearing travelers who apply for accommodation. It has been said that

an innkeeper is "one who keeps a house publicly, openly and notoriously, for the entertainment and accommodation of travelers, and others, for a reward." *State* v. *Stone,* 6 Vt. 295, 298. Customarily, an innkeeper employs some means of advertising to the public the public character of his hostelry. A sign is commonly evidence of the house's character, but is not essential to an invitation to the public. *Parker* v. *Flint,* 12 Mod. Rep. 255; Schouler Bailments (3d ed.), § 276. But in some form, no matter how quietly or unostentatiously, the owner of the house must hold himself out as being a public entertainer. In this state the status of innkeeper connotes the requirement to entertain, if there be accommodation for him, any respectable person who applies for lodging and food, regardless of his race or color. An innkeeper may not pick and choose. He must take his guests as they come. It is difficult to phrase a satisfactory distinction between certain types of modern boarding houses or similar establishments, and inns. Frequently it is a question for the jury to pass upon. But however difficult it may be to state the difference in words, "the average of mankind readily apply the distinction." Schouler, *supra,* § 279.

The definitions of inns and innkeepers to a large extent describe those who are guests. A guest, according to all the early cases, is a "wayfarer," a "traveler," one who is "on his way." Sometimes he has been called "a transient person." *Hancock* v. *Rand, supra,* 9. In *Calye's Case, supra,* it was said that "to entitle the plaintiff to bring the action, he ought to be a passenger; * * * a neighbor shall not have the action." In *Crapo* v. *Rockwell,* 48 Misc. Rep. 1, Mr. Justice Cochrane reviewed the cases on this head to the date of his opinion (1905) and concluded that the idea of the guest being a traveler "is carried out with

remarkable constancy. \* \* \* They (the authorities) are unanimous in conveying the idea that the relationship of innkeeper and guest applies to travelers, and I have discovered none which gives any other intimation.'' In *Hancock* v. *Rand, supra,* 10, Judge Miller said: '' The length of time that a man is at an inn makes no difference, whether he stays a week or a month or longer; so although he is not strictly transient, he retains his character as a traveler.'' The more general modern trend, however, seems to be toward a relaxation of the older rule, so as to give the status of guest to townsmen or neighbors. 14 Ruling Case Law, 495, 496, and cases there cited; and *Walling* v. *Potter,* 35 Conn. 183; *Orchard* v. *Bush & Co.,* L. R. 2 Q. B. D. (1898) 284. The mere fixing of the price does not change the status of one who would otherwise be a guest, into that of boarder or tenant. *Hancock* v. *Rand, supra,* 8. If, however, the person accommodated should agree with the innkeeper to hire rooms for a definite term or season, he is not a guest. *Hancock* v. *Rand, supra;* *Crapo* v. *Rockwell, supra.*

The application of these rules to the facts here present is not difficult. The plaintiff lost a gown, valued at $100, under circumstances that render defendant clearly liable, if it were conducting an inn, and she was its guest. The defendant's house or building, claimed to have been an inn, was situate at Broadway and Ninety-eighth street, in the borough of Manhattan. The description of the place could hardly have been more meagre and unilluminating. Apparently there was no outward sign to indicate any special character of occupancy; at least none was mentioned. The house was known as the Schuyler Arms. The only testimony upon the subject of its name was to the effect that it was not called a hotel. In the defendant's billheads, however, it was designated as '' Hotel Schuyler

Arms.'' There was a small entrance hall, or lobby, upon the street floor, at the rear end of which was a desk, and a telephone switchboard. There was an elevator, in charge of a male operator. A register was kept. There were no bellboys. Apparently the building was constructed to serve as an ordinary apartment house, and had not been altered physically to conform to the familiar plan or scheme of an hotel lay-out. The rooms occupied by the plaintiff suggest, both in number and arrangement, a flat-house apartment of a very common type. The suite consisted of two bedrooms, a living-room, a bath-room and a kitchen. In the kitchen was an ice-box or refrigerator. The occupants of the house were allowed to do their own cooking. The plaintiff, and her female companion or friend who lived in the apartment with her, did cook some of their food in their kitchen. The ice was not furnished by the defendant; it was ordered by the occupants as needed. There was a restaurant in the building, conducted by the defendant; it was open to the public. Plaintiff and her living companion, and the other occupants of the building, took occasional meals at the restaurant, and the charges for such meals were added to the bills, which were made out weekly. The testimony on behalf of the defendant was that no transients were accommodated. The plaintiff not only offered no proof to rebut this, but endeavored to exclude all proof upon the subject of the general character of the house. While there was no evidence directly related to the subject, it is reasonably plain that the arrangement of the space occupied by the plaintiff and her friend was typical of the general scheme of subdivisions throughout the building. The plaintiff and her friend kept no maid. The maid service, exclusive of kitchen or cooking service, was furnished by the defendant.

There was a conflict as to what occurred when the

plaintiff engaged the rooms. She said she asked the price per day, and was given the figure of three dollars a day. The defendant's employee testified that the talk exclusively was of a hiring by the week, at twenty-one dollars. Concededly, the bills were made out, and paid, weekly, at that rate. As the plaintiff left at the end of a week, we have not the light that might have been thrown by the amount of payment demanded and made for any period short of a full week.

I see no inn here, nor any room for a difference of opinion upon the subject among reasonable men. How or why the plaintiff was led to go there is not disclosed. It is evident that she was looking for a small and inexpensive apartment, in a building containing a restaurant, and in which she could do what has come to be known as " light housekeeping; " and that is precisely what she got. The very fact that the arrangement did not contemplate the accommodation of herself alone, but allowed her to bring in and lodge her friend — whether as lodger, boarder or sharer of expenses does not appear — is enough of itself to show that there was no such agreement as is commonly made between a guest and an innkeeper. It is a matter of general knowledge, of which we may take judicial notice, that innkeepers charge according to persons, as well as according to rooms. The only feature that remotely suggests an inn is the keeping of a register; but, plainly, a lodging house would not become an inn because a register was kept. The use of the word " hotel " as part of the title of itself means nothing in these days of so-called " apartment house hotels." " Our modern apartment houses," says Mr. Schouler (Bailments [3d ed.], § 278), " often styled ' hotels,' whose rooms, suites, or flats are let, furnished or unfurnished, to individuals for their private lodging and housekeeping convenience, cannot be reckoned

Appellate Term, First Department, March, 1919.   [Vol. 106.

inns, even though transient people be occasionally lodged there and the proprietor leaves a janitor or other personal representative in charge.'' And see the interesting treatise upon the subject of the word '' hotel '' by First Judge Daly in *Cromwell* v. *Stephens, supra.* It would be going against all reason and experience to hold that the defendant was conducting an inn. Even if the defendant's house was an inn, the plaintiff was a tenant, and not a guest.

If the view I take be right, it is unnecessary to decide whether, if the defendant's house were an inn, and the defendant an innkeeper as to the plaintiff, the plaintiff was a wayfarer or transient person, or a resident or '' neighbor.'' Although I think there is grave reason to doubt that she was a traveler, and while I should have been strongly inclined, as a trier of the facts, to find that she had no *animus revertendi* to Boston, where she originally came from, I think there was, perhaps, sufficient basis for the finding that she had not ceased to be a traveler at the material times. The point is of no materiality, however, because of our opinion that the defendant was not an innkeeper. Accordingly, we are not called upon to decide whether the rule that a resident cannot be a guest in the technical sense still governs in this state.

It follows that the plaintiff did not make out a case.

Judgment reversed, with thirty dollars costs, and complaint dismissed, with costs.

GUY and BIJUR, JJ., concur.

Judgment reversed, with thirty dollars costs.