In the Matter of JOSEPH W. SIDENBERG et al., as Trustee under the Will of GUSTAVUS SIDENBERG, Deceased, Petitioners, against ALGER B. CHAPMAN et al., Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 5, 1948.

*M. S. and I. S. Isaacs,* attorneys (*David Oppenheim* and *Lewis M. Isaacs, Jr.,* of counsel), for petitioners.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General* and *John C. Crary, Jr., Assistant Attorney-General* of counsel), for respondents.

BREWSTER, J. This is a review under article 78 of the Civil Practice Act of a determination of the State Tax Commission's assessment of unincorporated business taxes (Tax Law, art. 16-A), against relators for the years 1941–1944, inclusive.

As trustees under a will relators are owners of a nine-story hotel building in New York City, known as Hotel Theresa, on the ground floor of which are eleven separate store spaces unconnected with any part of the building designed and used for hotel purposes.

During the tax years in question the hotel was operated under the management of Gresham Management Company, a corporation, pursuant to a written agreement which comprised a profit sharing arrangement as to the operation of the hotel part of the building, as a hotel. It appointed the Gresham company " sole and exclusive " agents of the relators in the " renting and management of the entire Hotel Theresa property " with " all the necessary and usual authority and powers

in the handling of problems and conditions arising in the operation of the property \* \* \* subject, however, to your [relators'] general powers of supervision and control of the entire property."

The first question raised is whether the relators, by the arrangement aforesaid, so divorced themselves from the *hotel business* that it may not be said they conducted or engaged in it, so as to be liable for the taxes assessed. Relators contend for the affirmative; that under their arrangement with Gresham they came under the noncoverage provision of the statute (Tax Law, § 386), whereby, as owners, they are not to " be deemed engaged in an unincorporated business solely by reason of the holding, leasing or managing of real property." I cannot agree. The contract with Gresham was not an outright lease. It has several features of a joint venture into the business of operating and engaging in the hotel business. In addition to the reservation of general power of supervision and control, both owner and agent were obligated to invest certain sums of money in order to launch the venture into a new and untried field of the hotel business, and the owners were to effect a jointure of insurance to protect their respective interests " in connection with the operation and management of the hotel ". Under the proofs submitted I think relators failed to establish that they were not engaged in the hotel business.

The next question is as to relators' tax status as regards the store properties in the building. I incline to the view that here, too, they have failed to prove an exemption. The stores, which they rented independent of Gresham and the hotel business, did have some connection with the latter. The cost of heating them was charged against the latter in computing the net proceeds of its operation. The stores themselves, different from the situation shown in *People ex rel. Voelkel* v. *Browne* (268 App. Div. 596, affd. 294 N. Y. 834), were an integral part of the very building which came to relators as their principal asset, and the income rental from the stores was derived from a part of the building employed in a business venture. In the hotel business depreciation was taken on the entire building, including the part rented for stores, in arriving at its taxable income. Thus it seems to me that the matter of relators' rentals from the stores is so interwoven with their engagement in the business of hotel-keeping that the former is not clearly shown to be within the provision of noncoverage.

As to relators' third point (as to crediting the $5,000 exemption to each of the various trust entities, etc.), I do not agree.

There was but one unincorporated business and hence there could be but the one statutory exemption which is allowed by section 386-f of the Tax Law. True, the net income eventually went to different beneficiaries under the trust provisions and technically there were separate trusts with different trustees. However, from the way all the trustees joined in conducting the affairs and in operating with the principal assets, *in solido* — this did not result in the carrying on of separate businesses within the intendment of the exemption. The trustees, all of them, for the ultimate benefit of all the *cestui que trustent,* conducted or engaged in a single business with the assets common to the various trusts.

The determination should be confirmed, with costs to the respondents.

HEFFERNAN, FOSTER and RUSSELL, JJ., concur; HILL, P. J., dissents as to the income from the leased stores.

Determination confirmed, with $50 costs to respondents.