THE PEOPLE OF THE STATE OF NEW YORK ex rel. MAX J. RUBIN et al., as Trustees of HOTEL WINDERMERE TRUST, Relators, against TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, August 13, 1959.

*Lynton & Saslow* (*Harold A. Axel, Bernard A. Saslow* and *Richard Rodwin* of counsel), for relators.

*Louis J. Lefkowitz, Attorney-General* (*Herman Nehlsen* and *Paxton Blair* of counsel), for respondent.

HERLIHY, J. The relators are the trustees mentioned herein.

The relators were appointed trustees of the Hotel Windermere Trust by an order of the Supreme Court, pursuant to section 122-a of the Real Property Law, to reorganize a defaulted trust mortgage on the premises made by a prior owner, the Windermere-92nd Street Corporation. *The purpose of the trustees herein was to liquidate the property with due regard to the interest of the certificate holders.* They operated the premises as an apartment hotel from the date of their appointment until March 30, 1953 when the premises and the personal property therein were sold for $1,800,000.

During the time of the operation all income after expenses was applied to the reduction of the certificates.

The property, known as "Hotel Windermere" or "Windermere Hotel", was a 22-story, fireproof structure, completed in 1927, located on the northeast corner of West End Avenue and 92nd Street in the Borough of Manhattan and admittedly a residential section of New York City. It consisted of 624 rooms divided into 395 apartments, 300 of which were equipped with kitchenettes, comprised of sink, drainboard and refrigerator. There were no stores but on the ground floor space was rented to doctors and there was a restaurant operated by the trustees with no outside exit. Part of the basement was rented to a valet and the operation of a laundry.

The trustees furnished a central telephone switchboard with operator, bellboy service, elevator service, daily maid service, including linen service. All of the apartments were rented on a lease or monthly basis except 5.37% which were either unoccupied or transient. The record discloses that the transients in most instances were visitors of the tenants.

Section 386 of the Tax Law defines what constitutes an '' unincorporated business '' and it is relators' contention that it exempts an owner or fiduciary whose activities consist of the ownership and management of real estate.

The respondent, however, in its final determination found: '' That the Trustees herein during the years under review were conducting and carrying on a trade, business or occupation subject to the unincorporated business tax and that the computation of the taxes as stated for the years in question is correct and does not include taxes or other charges which could not have been lawfully demanded and that no payment has been illegally made or exacted of any amount so computed and that the applications herein for refund are hereby denied, and it is so ordered.''

The unincorporated business tax (Tax Law, art. 16-A) was enacted in 1935. In 1938 it was amended to exclude an owner, lessor or fiduciary '' solely '' engaged in the '' holding, leasing or managing of real property ''. (L. 1938, ch. 411.) The reason for such amendment was contained in the memorandum which reads as follows: '' This bill amends section 386 of the Tax Law. The amendment proposes to exclude the holding or operating of real property from the definition of unincorporated business. Real estate in general is already bearing more than its fair proportion of the tax burden. *Many properties are now being operated by trustees for the benefit of mortgagees who in all probability will never recover more than the mortgage obligations.* To tax the income derived from such properties as a part of business carried on adds a most unfair burden to that already borne. Equity and good reason demands that income from such operations shall be exempt from the unincorporated business tax.'' [Emphasis supplied.] (Governor's Bill Jacket on L. 1938, ch. 411.)

The court takes judicial notice the years 1935–1938 were '' depression '' years. The financial status of the property here concerned in 1948–1953 demonstrates the wisdom for the amendment in ever-changing economic and other variable conditions and circumstances. The respondent Tax Commission contends that the relators were operating a business as distinguished

from real estate. Relators contend that their operation was that of an apartment hotel and subject to the benefit of the real estate exemption of section 386.

The situation presents a "borderline" case and requires consideration be given to the intent and purpose of the law as it applies to factual elements herein. The application of a proper test is "What is the dominant factor in the conduct of the relators' business?" Is it the operation of the restaurant, the real estate being incidental, or is it the operation of the real estate as an apartment hotel with the restaurant being incidental thereto? It would seem that if the restaurant were the dominant factor, operating at a loss would justify its closing but the continuing thereof would seem to imply that it — the restaurant — was an incidental and necessary factor to the successful operation of the real estate as an apartment hotel. Such test likewise is applicable to the "telephone" service, also operated at a loss.

The proof does not suggest or in any way substantiate that the "Windermere" was being operated so that it was open to the public for accommodations of "night lodgings" or short durations but to the contrary that it was the intent and purpose of the trustees to operate on a permanent — yearly or monthly — basis. Such distinction has long been recognized. (*Roberts* v. *Case Hotel Co.*, 106 Misc. 481, 487 [1919].) The State offered no proof to substantiate its contention.

The situation herein is not within the facts of *Matter of Sidenberg* v. *Chapman* (273 App. Div. 566, affd. 298 N. Y. 730) where the trustees were those of the estate of a decedent, the property in question was only a part of its assets, the trustees entered into a joint venture agreement with agents to operate the property herein on a net profit distribution basis and where there were several stores as part of the building. The "Windermere" had no public rooms available for conventions or public meetings. The commission found it to be a "residential apartment hotel".

We agree with the respondent — mentioned on the argument — that its duty is to diligently investigate and enforce tax laws. Nevertheless there must be a line — no matter how thin — of demarcation between what is and what is not taxable under certain stated facts. Here we feel that the "business operation" was incidental to the successful operation of the real estate and relators are entitled to the claimed exemption. It being determined relators in operating the "Windermere" were not subject to the provisions of section 386 the holding of

a purchase-money mortgage resulting from the sale of the premises is not subject to the tax.

The determination of the State Tax Commission should be annulled.

COON, J. P., GIBSON and REYNOLDS, JJ., concur.

Determination of the State Tax Commission annulled, without costs.