CRAPO v. ROCKWELL et al.

(Supreme Court, Trial Term, Albany County. July, 1905.)

1. INNS—LIABILITY OF INNKEEPER.

An innkeeper is an insurer of the property of his guest, and liable for its loss for any cause whatever, except from neglect of the guest or act of God or the public enemy.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Innkeepers, § 17.]

**2. SAME—INNKEEPER AND GUEST—EXISTENCE OF RELATIONSHIP.**

> A woman, who had lived for 17 months in an inn which accommodated both transient and permanent lodgers, and had moved property into her rooms, which indicated an intention to make more than a temporary sojourn, and had made the arrangements for her stay with the proprietors themselves, instead of the clerk, was not a traveler and guest, within the rule which makes an innkeeper an insurer of the property of his guest, although, when she first went to the inn, she contemplated housekeeping, and never made any agreement for lodging for a definite time, and had frequently changed her apartments during her stay at the inn.

> [Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Innkeepers, §§ 12, 13.]

Action by Jennie Crapo against Hiram J. Rockwell and another. On motion for nonsuit reserved until after verdict. Complaint dismissed.

The defendants are proprietors of the Ten Eyck Hotel, in Albany, N. Y. The plaintiff, while an occupant of certain rooms in the Annex connected with said hotel, lost and sustained injuries to her property in such rooms. This action is based on the alleged common-law liability of the defendants as innkeepers. The defendants allege that the relationship of innkeeper and guest did not exist between them and the plaintiff, but that the latter was a permanent lodger.

Mead & Hatt, for plaintiff.
J. Murray Downs, for defendants.

COCHRANE, J. The strict rule of the common law has declared for centuries, and still declares, that an innkeeper is the insurer of the property of his guest, and liable for its loss for any cause whatever, unless such loss occurs from the neglect of the guest or the act of God or the public enemy. Wilkins v. Earle, 44 N. Y. 172, 4 Am. Rep. 655; Hulett v. Swift, 33 N. Y. 571, 88 Am. Dec. 405.

This rigorous rule had its origin in the feudal conditions which were the outgrowth of the Middle Ages. In those days there was little safety outside of castles and fortified towns for the wayfaring traveler, who, exposed on his journey to the depredations of bandits and brigands, had little protection when he sought at night temporary refuge at the wayside inns, established and conducted for his entertainment and convenience. Exposed as he was to robbery and violence, he was compelled to repose confidence, when stopping on his pilgrimages over night, in landlords who were not exempt from temptation; and hence there grew up the salutary principle that a host owed to his guest the duty, not only of hospitality, but also of protection. With the march of civilization and the progress of commercial development, the conditions in which the common-law liability of the innkeeper to his guest originated have passed away; but other conditions exist, which render it wise and expedient that the modern hotel keeper should respond for the loss of his guest's property while he is extending to the latter for compensation his hospitality, and there has consequently been no relaxation in the rule of his common-law liability, except as such liability has been modified by statute, which modifications do not apply to this case.

While there is no doubt about the existence of the above rule, a question arises as to its application to the facts of this case. It is urged by the defendants that the plaintiff was not their guest in the sense in which that term is used in the rule above referred to. The idea has always existed that the relationship of innkeeper and guest involved a visit or sojourn, on the part of the latter, of a transitory nature. The primary and fundamental function of an inn seems clearly to have been to furnish entertainment and lodging for the traveler on his journey. This at all times seems to have been its distinguishing feature. This idea has been expressed in the literature of ages, in history, sacred and profane, in fiction, and in poetry. So true is this that the term "inn" seems always to have been used in connection with the corresponding notion of travelers seeking the accommodation and protection of the inn. Thus the Christian era dawned on a Judean scene, where travelers away from home, who had gone up to be taxed pursuant to the decree of the Roman Emperor, sought refuge in a manger, "because there was no room for them in the inn." Sir Walter Scott characterizes the inn of the old days of Merry England as "the free rendezvous of all travellers," of which the bonny Black Bear of Cumnor village, not conducted merely, but "ruled, by Giles Gosling, a man of a goodly person," as landlord, was a typical instance. And so the most illustrious bard of England says, referring to the time of approaching twilight, with the west glimmering with streaks of day, "now spurs the lated traveller apace to gain the timely inn."

Turning from the pages of literature to those of legal lore, we find that the same idea is carried out with remarkable constancy. An inn is defined by Bacon to be a house for the entertainment of travelers and passengers, in which lodging and necessaries are provided for them and for their horses and attendants. Bacon's Abr. "Inns," B. "The guest must be a traveler. 1 Roll. Abr. 3, E, 4; 2 Brownl. 254; Rex v. Luellin, 12 Mod. 445; Ingalsbee v. Wood, 36 Barb. 452; Bacon's Abr. 'Inns,' C, 5; Parkhurst v. Foster, Salk. 383." In Cromwell v. Stephens, 2 Daly, 22, it is said, referring to the case of Thompson v. Lacy, 3 B. & A. 283:

"Justice Bayley declares it to be 'a house where a traveler is furnished with everything which he has occasion for while upon his way,' and in the same case Best, J., says it is 'a house, the owner of which holds out that he will receive all travelers and sojourners who are willing to pay a price adequate to the sort of accommodation provided, and who come in a situation in which they are fit to be received.'"

In Ingalsbee v. Wood, 36 Barb. 456, it is said:

"He [the guest] must also be a traveler, within the meaning of the law, or have personal entertainment or accommodation as such."

And again, at page 461:

"The foundation of this strict rule of liability against innkeepers was for passengers and wayfaring men. Calley's Case, reported in 8 Co. 32, is one of the oldest cases in the books of reports, and is cited with approbation in all the modern authorities. It was there held 'that, to entitle the plaintiff to bring the action, he ought to be a passenger'; that 'a neighbor shall not have the action.' That case also holds out the idea that a guest of an inn is some-

thing more than the mere stopping of a neighbor for convenience. * * * We have now seen what it is to be actually a guest of an innkeeper. 'An inn is a house where the traveler is furnished with everything that he has occasion for while on his way.' Thompson v. Lacy, 3 Barn. & Ald. 283, 6. 'It is a house kept open publicly, for the lodging and entertainment of travelers generally, for a reasonable compensation.' Hill. Elem. of Law, 101; Jac. L. Dic. tit. 'Inn.' "

In Mowers v. Fethers, 61 N. Y. 37, 19 Am. Rep. 244, it is said:

"An innkeeper, at common law, has been said to be the keeper of a common inn for the lodging and entertainment of travelers and passengers, their horses and attendants, for a reasonable compensation. 5 Bacon, Abr. 'Inns,' etc., 228; Story on Bailments, § 475. The person or persons undertaking this public employment were bound to take in and receive all travelers and wayfaring persons."

It is needless to multiply authorities. They are unanimous in conveying the idea that the relationship of innkeeper and guest applies to travelers, and I have discovered none which gives any other intimation.

The facts in this case fail to show that, when the plaintiff sustained the loss for which she seeks to make the defendants responsible, the relationship of innkeeper and guest existed. She went to Albany in September, 1902, having just prior thereto married John M. Crapo, a business man of that city. With her husband she lived in various boarding houses until September, 1903, when they took rooms at the Ten Eyck Annex, where, with the exception of an absence of about five weeks at Bar Harbor, plaintiff continued to reside until February, 1905. The loss occurred in January of the latter year. Plaintiff's husband died at the Annex in November, 1904. He had resided and been in business in Albany since his marriage to plaintiff, and prior thereto. After their marriage he transferred his business to the plaintiff, and she is still conducting the same in Albany. There is no pretense that either she or her husband had any other residence than at the Ten Eyck Annex during the time they were there. Plaintiff testified on the trial that she resided at the Ten Eyck Annex at the time of the loss and injury to her property. When she first went there, she made the agreement for the rooms which she and her husband occupied. The defendants' evidence is that she received special rates which were charged to permanent boarders. Plaintiff denies knowledge of this, and says nothing was said to her on that point. On this motion her testimony must be assumed to be true; but she states that, although the hotel clerk exhibited to her various suites of rooms, he referred her to the defendants for her final arrangements, and, although different rooms were occupied at various times during her stay at the Annex, in each instance the hotel clerk either saw defendants or referred plaintiff to them for prices and final arrangements. She moved into her rooms her piano, thus indicating more than an intention to make a temporary sojourn. The property which is the subject of this action was not of a character such as is usually taken to hotels by transient guests.

This statement of facts, which is a brief résumé of the plaintiff's testimony in her own behalf, shows that the Annex was the plain-

tiff's home, her permanent abiding place, and that she was not there merely for temporary accommodation or as a transient guest. It is true plaintiff testified that, when she first hired the rooms, the defendants asked whether she wanted them for 1, 2, or 3 weeks, and that she told them she could not say, as she was "contemplating housekeeping." Her subsequent residence of 17 months at the Annex proves that if, when she first went there, she contemplated housekeeping, such contemplation never ripened into an intention. I do not mean to say that a resident of Albany may not go to one of the hotels of that city and establish between himself and the hotel keeper the relation of innkeeper and guest. It may be assumed .for the sake of the argument that such relationship existed between these parties when plaintiff first went to the Annex; but, if such was the case, that relationship by the lapse of time was lost long before her property was lost. The Ten Eyck is an inn where transient guests are received. But the evidence is that permanent lodgers also reside there, and as to the .latter the defendants certainly are not innkepers simply because they keep an inn. At common law an innkeeper was bound to receive all guests, provided he had accommodations and they were not objectionable persons. It cannot be claimed here that these defendants were under any legal obligation to permit the plaintiff to occupy the rooms in question. She at no time had a right to demand the same.

In Mowers v. Fethers, 61 N. Y. 38, 19 Am. Rep. 244, it was said:

"Where he [the innkeeper] is not bound to receive and entertain the person as his guest, the strict rule of common-law liability for the preservation of his property does not obtain. The obligation to respond for injury to property depends upon his duty to receive and entertain as an innkeeper, and they must stand or fall together. Grinnell v. Cook, 3 Hill, 485 [38 Am. Dec. 663]; Ingalsbee v. Wood, 36 Barb. 455; Id., 33 N. Y. 577 [88 Am. Dec. 409]; Hulett v. Swift, 33 N. Y. 571 [88 Am. Dec. 405]."

Great stress is placed by the plaintiff on the case of Hancock v. Rand, 94 N. Y. 1, 46 Am. Rep. 112. That case was decided by a bare majority of the court, and while, of course, it is controlling in reference to a similar state of facts, nevertheless it is manifest that the doctrine of innkeeper's liability was there carried to the limit. But there is a wide distinction between that case and this. In that case plaintiff was an inmate of the hotel in question for 7 months, and had been there 4 months, when her property was taken. In this case plaintiff was at the Annex about 17 months. But the controlling feature in that case was that plaintiff was the wife of Gen. Hancock, an officer in the United States Army, without a permanent residence anywhere, and continually subject to marching orders. The opinion in that case fully carries out the idea above exemplified that the relationship of innkeeper and guest applies to travelers, and places Gen. Hancock in that category, as is manifest from the following extracts therefrom, the italics being mine:

"Officers of the army and navy, and soldiers and sailors, who have no permanent residence which they can call home, may well be regarded as *travelers or wayfarers*, when stopping at public inns or hotels. * * * The fact that Gen. Hancock was subject to marching orders at any moment, and that this contingency was expressly provided for, makes a wide distinction between

the case at bar and one which possesses no such features. This difference, and the circumstances connected with it, should be sufficient to take this case out of the ordinary rule which applies between an innkeeper and a permanent boarder, and fully sustains the rule we have laid down, without disturbing the relationship or obliterating the distinction which exists between a guest and a boarder. In view of the evidence presented, and the findings of the referee, we think the defendants are bound within the reason of the rule under which an innkeeper is held liable for the goods and property of his guest. As a soldier, Gen. Hancock was unable to acquire a permanent home, and *by reason of his profession was obliged to live temporarily and for uncertain periods of time at different places, and with innkeepers and others who make provision for the entertainment of guests and travelers. He was necessarily a transient person,* liable to respond to the call of his superiors at any moment, and to change the locality of himself and family. * * * There would seem to be but little question that the weight of the testimony is in favor of the proposition that *they were travelers or wayfarers,* and that there was no hiring of the rooms of the defendants for a season or a specified time. * * * As we have already seen, the general, being a soldier, and liable to be called to distant and remote places by order of the government, and thus obliged to change his headquarters, had no residence in the city of New York, and when stopping at a hotel awaiting orders, with the right to leave at any moment, *he must be regarded as a transient person, the same as any other traveler or passenger."*

The case of Metzger v. Schnabel, 23 Misc. Rep. 698, 52 N. Y. Supp. 105, merely follows Hancock v. Rand, supra. It appears from the opinion that there was "direct testimony that he (Metzger) was an "officer in the German army and a wayfarer here." The Hancock Case, it seems to me, is clearly distinguishable from the present case.

I have not overlooked the fact that no definite time was fixed on, and that the parties were at liberty on either side to terminate the agreement at any time. While such fact migt be an important, or even a controlling, circumstance in some cases, it cannot have much significance where a party lives in a hotel for as long a period as the plaintiff did in this case. It is not possible to regard her in the light of a transient guest. I believe that no case can be found which goes to that extent. "An innkeeper is subject to extraordinary liability, and a person claiming to enforce such liability must show a case clear beyond all reasonable doubt." Ingalsbee v. Wood, 36 Barb. 455. As it appears from the plaintiff's testimony that the relationship of innkeeper and guest did not exist between the defendants and herself, it follows that the complaint must be dismissed.

Complaint dismissed, with costs.