138 N.J. Super. 112 (1975)
350 A.2d 279
HY-GRADE OIL CO., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
NEW JERSEY BANK, A NATIONAL BANKING CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1975.
Decided December 23, 1975.
*114 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. James LePore argued the cause for appellant (Mr. Michael J. Breslin, Jr., attorney).
Mr. Allan A. Maki argued the cause for respondent.
The opinion of the court was delivered by BISCHOFF, J.A.D.
The resolution of this appeal requires us to determine whether a clause in a "night depository agreement" between a bank and a customer, providing that "the use of the night depository facilities shall be at the sole risk of the" customer, is valid and enforceable.
Plaintiff Hy-Grade Oil Company was a regular customer of defendant New Jersey Bank. In February 1974, in order to protect the increasing cash supply generated by operations of its fuel business, plaintiff's manager Ronald Flaster signed a night depository agreement with defendant bank.[1] This agreement (in printed form and apparently used by other banks in the area) contained the following two provisions:

* * * * * * * *
3(a)  The bank shall not be responsible for the loss or destruction of the pouch or its contents, in whole or in part, either before or after its being placed in the night depository, resulting directly or indirectly from (1) defects in the pouch or its lock; (2) defects *115 in or failure of the night depository entrance chute or safe; (3) theft, burglary or embezzlement. The finding of the bank as to the presence or absence of the pouch in the night depository, and as to the contents thereof shall be conclusive and binding upon the undersigned.
(b)  It is hereby expressly understood and agreed that the use of the night depository facilities is a gratuitous privilege extended by the bank to the undersigned for the convenience of the undersigned, and the use of the night depository facilities shall be at the sole risk of the undersigned.

* * * * * * * *
Flaster contends that these provisions were neither pointed out nor explained to him. At the time of signing the agreement Flaster received a leather bag with a zipper and lock on top, together with a key to the lock.
Plaintiff's testimony was that on February 18, 1974 Ronald Flaster deposited $1,585 into the night depository box. On February 20, 1974 he called the bank to verify the amount in plaintiff's account and learned that the amount placed in the night depository on February 18 had not been credited to plaintiff's account. Flaster went to the bank and made inquiry, and was shown the top portion of plaintiff's bag still locked with the lower portion torn away. He was informed that when the bank was opened on February 19 and the collection bin opened, the portion of the bag exhibited was found but no money was located and the balance of the bag was missing. When the bank refused to credit plaintiff's account with the amount Flaster contends was deposited in the chute, plaintiff instituted this action contending that defendant (1) wrongfully refused to credit its account with the amount deposited and (2) negligently handled the contents of the night depository.
In addition to a general denial of plaintiff's allegations, defendant asserted that plaintiff's action was barred by the terms of the night depository agreement.
At the conclusion of trial the judge delivered an oral opinion granting defendant's motion to dismiss the complaint "predicated on the agreement as executed by the parties and the legal relationship established therein."
*116 Before considering the import and validity of the exculpatory clauses in the agreement we turn to basic factual and legal issues.
It is essential to the creation of a bailment that the property be turned over to the possession and control of the bailee, MacFarland v. C.A.R. Corp., 58 N.J. Super. 449, 452 (App. Div. 1959), for where the reputed bailee does not know of the article or that it has been delivered to him, there cannot be a bailment. Cerrata v. Kinney Corp., 50 N.J. Super. 514, 517 (App. Div. 1958).
Our review of the record satisfies us that the testimony as to delivery or placement of the alleged deposit into the night depository is not at all clear and is subject to divergent inferences and conclusions. The trial judge made no findings of fact on that basic issue and the matter must be remanded for a further consideration thereof.
If the trial judge concludes there was no delivery of funds to the bank that will, of course, be the end of the matter. If, on the other hand, he concludes that the testimony discloses delivery, then our following observations on the validity of the exculpatory clauses included in the night depository agreement will become relevant.
"Where they do not adversely affect the public interest, exculpatory clauses in private agreements are generally sustained." Mayfair Fabrics v. Henley, 48 N.J. 483, 487 (1967). Illustrative cases where such clauses were enforced, chiefly in the commercial setting, are Mayfair Fabrics v. Henley, supra; Moreira Construction Co., Inc. v. Moretrench Corp., 97 N.J. Super. 391 (App. Div. 1967), aff'd o.b. 51 N.J. 405 (1968); Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254 (App. Div. 1973), aff'd o.b. 64 N.J. 197 (1974); Hillside v. Lehigh Valley R. Co., 96 N.J. Super. 167 (App. Div. 1967); Midland Carpet Corp. v. Franklin Associated Properties, 90 N.J. Super. 42 (App. Div. 1966).
It is clear that where a party to the agreement is under a public duty entailing the exercise of care he may *117 not relieve himself of liability for negligence, Mayfair Fabrics v. Henley, supra 48 N.J. at 487; McCarthy v. National Ass'n for Stock Car Auto Racing, Inc., 48 N.J. 539 (1967), and unequal bargaining power or the existence of a public interest may call for the rejection of such clauses. Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955). See discussion in Henningsen v. Bloomfield Motors, 32 N.J. 358, 397 (1960); cf. Collins v. Uniroyal, 126 N.J. Super. 401, 406 (App. Div. 1973), aff'd 64 N.J. 260 (1974).
Turning to the factual situation before us, it involves the relationship between a national bank and a depositor. We have held that a "bank has been entrusted with an important franchise to serve the public and has, from time to time, received broad legislative protection." Reinhardt v. Passaic-Clifton National Bank, 16 N.J. Super. 430, 436 (App. Div. 1951), aff'd o.b. 9 N.J. 607 (1952).
The Uniform Commercial Code, "Bank Deposits and Collections," N.J.S.A. 12A:4-101 et seq., contains many provisions protecting banks in their daily operations. See also N.J.S.A. 17:9A-229.1. We find it significant that the Legislature provided in the same statute, N.J.S.A. 12A:4-103, that a bank may not, by agreement, disclaim responsibility for "its own lack of good faith or failure to exercise ordinary care" in the discharge of the duty imposed upon it by that statute.
A review of the cases in other states considering the validity of similar exculpatory clauses in night depository contracts indicates that the majority rule is to give full force and effect to the clauses. Kolt v. Cleveland Trust Co., 156 Ohio St. 26, 99 N.E.2d 902, 27 A.L.R.2d 530 (Sup. Ct. 1951); Irish & Swartz Stores v. First National Bank of Eugene, 220 Or. 362, 349 P.2d 814 (Sup. Ct. 1960); Valley National Bank v. Tang, 18 Ariz. App. 40, 499 P.2d 991 (Ct. App. 1972).
The basic theory underlying these and other similar cases is that the absence of an agent of the bank when the night *118 depository facilities are used creates the possibility of dishonest claims being presented by customers. In New Jersey we have rejected such a thesis in other situations and have held that the possibility of fraudulent or collusive litigation does not justify immunity from liability for negligence. Cohen v. Kaminetsky, 36 N.J. 276, 283 (1961); Immer v. Risko, 56 N.J. 482 (1970).
Other courts have refused to recognize the validity of such clauses. In holding such a clause inimical to the public interest, the court in Phillips Home Furnishings Inc. v. Continental Bank, 231 Pa. Super. 174, 331 A.2d 840, 844-845 (Super. Ct. 1974), said:
We find the public need for professional and competent banking services too great and the legitimate and justifiable reliance upon the integrity and safety of financial institutions too strong to permit a bank to contract away its liability for its failure to provide the service and protections its customers justifiably expect, that is, for its failure to exercise due care and good faith * * *. [331 A.2d at 844-845]
Banks perform an important and necessary public service. It cannot be seriously argued that they are not affected with a public interest. That this is so is obvious from only a cursory examination of the extensive statutory regulations covering every phase of the banking business, including organization, merger, establishment of branches, investments, insurance of deposits, and others, appearing in the Banking Act of 1948, N.J.S.A. 17:9A-1 et seq., and the Uniform Commercial Code, "Bank Deposits and Collections," N.J.S.A. 12A:4-101 et seq.
We therefore hold that a bank cannot, by contract, exculpate itself from liability or responsibility for negligence in the performance of its functions as they concern the night depository service. Cf. Reinhardt v. Passaic-Clifton National Bank, supra.
It is immaterial whether the purported exculpation is based on the device of placing the sole risk of loss on the depositor, as appears in clause 3(b) of the agreement in *119 question, or by the device of making "the finding of the bank as to the presence or absence of the pouch in the night depository and as to the contents thereof * * * conclusive and binding", as appears in clause 3(a). Phillips Home Furnishings Inc. v. Continental Bank, supra.
We should not be understood as implying that a bank and a customer may not, by negotiation and agreement, determine the standards by which the responsibility of the bank is to be governed so long as those standards are not unreasonable. Cf. N.J.S.A. 12A:4-103(1). The burden of proof of a violation of such a standard and proximate causation would remain on the depositor. However, an agreement such as the one now before us, which exculpates the bank from all responsibility without reference to any standard of care, we hold to be contrary to public policy and invalid.
It follows from what we have said that plaintiff's right to recover herein is based on the usual principles of negligence and proximate cause as they are applied between bailor and bailee.
The judgment in favor of defendant is reversed and the matter is remanded for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] The establishment of a night depository service is authorized by statute, N.J.S.A. 17:9A-25(6).