Argued September 9, remanded December 23, 1976

# REAL GOOD FOOD STORE, INC.,
*Respondent,*
*v.*
# FIRST NATIONAL BANK OF OREGON,
*Appellant.*
## (TC 413-184, SC 24314)
### 557 P2d 654

*Graham M. Hicks,* Portland, argued the cause for appellant. With him on the briefs were Miller, Anderson, Nash, Yerke & Winer and Fredric A. Yerke, Portland.

*Michael A. Corn,* Portland, argued the cause for respondent. With him on the brief was Henry A. Carey, Jr., Portland.

Before Denecke, Chief Justice, and McAllister, O'Connell, Tongue, Howell, Bryson and Lent, Justices.

TONGUE, J.

## TONGUE, J.

This is an action against a bank to recover $1,169.64 alleged to have been placed by plaintiff in a "night depository" of defendant, but not credited to plaintiff's account. Defendant demurred to the complaint. The demurrer was overruled and defendant declined to plead further. Judgment was then entered for plaintiff and defendant appeals.

By its demurrer defendant admits, for purposes of the demurrer, plaintiff's allegations that plaintiff "deposited" $1,404.22 in defendant's night depository; that defendant then "exercised exclusive possession, control and authority over such deposit," but "failed and refused to credit the account of plaintiff with the amount of such deposit"; that "defendant through its employees and agents has failed to exercise due care in the handling of and accounting for plaintiff's deposit"; and that plaintiff's loss was a direct and proximate result of such negligence. Plaintiff's complaint also alleged, as a second count, that defendant "breached its contract by failing to credit to the account of plaintiff the amount of $1,404.22."

Defendant defends on the ground that a written contract between plaintiff and the bank contained a provision relieving the bank of liability for the loss of any deposit made by plaintiff in its night depository[1] and that an essentially similar contract provision was held to be valid by this court in *Irish & Swartz Stores v. First Nat'l Bk.,* 220 Or 362, 349 P2d 814 (1960).

We believe that the facts alleged in plaintiff's

---

[1] The printed agreement signed by plaintiff included the following provision, among others:

"* * * That said Special Depository is provided by the Bank without compensation, as a convenience to and at the risk of the undersigned; that the Bank shall not be required to carry insurance on said Special Depository or the contents of any bag deposited therein nor shall the Bank be responsible for any loss of any bag or its contents or any part thereof."

References in this opinion to "the bank" and to "banks" are intended to refer to defendant and to banking institutions generally.

complaint, which are admitted for purposes of the demurrer, state a cause of action against the defendant bank. In *Irish & Swartz* the "only issue which was presented to the jury was that of delivery, i.e., did plaintiff make a delivery of the bag in question * * * to the defendant?" 220 Or at 367. That case was tried before a jury, which returned a verdict in favor of the bank based upon its special finding that plaintiff did not make a delivery of the bag to the defendant. In this case it is admitted by defendant's demurrer that the money was delivered to the "exclusive" possession and control of the defendant.

■ If the bank had denied that it received the deposit then a question of fact would have arisen which, as in *Irish & Swartz,* should have been submitted to the jury. When, however, a bank has admitted that the money was delivered to it, we believe that the burden should be upon it to prove that the loss did not occur as a result of the negligence or dishonesty of its employees and that the bank should not be permitted to invoke the terms of an exculpatory clause to relieve it of liability for the negligence or dishonesty of its own employees.

In *Pilson v. Tip-Top Auto Co.,* 67 Or 528, 136 P 642 (1913), this court held (at 535) that:

> "It is the better rule that a bailee for hire cannot by contract so limit his responsibility to the bailor as not to be liable for his own negligence or the negligence of his agents and servants: [citing many cases]."

That rule has been followed in *Hamilton v. Baggage etc. Transfer Co.,* 97 Or 620, 625, 192 P 1058 (1920); *Simms v. Sullivan,* 100 Or 487, 493, 198 P 240 (1921), and in *Voyt v. Bekins Moving & Storage,* 169 Or 30, 46, 119 P2d 586, 127 P2d 360 (1942).

A similar rule has been adopted by the Restatement of Contracts 1080-081, § 575(1), as follows:

> "(1) * * * a bargain for exemption from liability for the consequences of negligence is illegal if * * *.
>
> "(b) one of the parties is charged with a duty of public

service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

Restatement of Torts 2d 567-68, § 496B, comment *g* (1965), states a similar rule, as follows:

"Where the defendant is a common carrier, an innkeeper, a public warehouseman, a public utility, or is otherwise charged with a duty of public service, and the agreement to assume the risk relates to the defendant's performance of any part of that duty, it is well settled that it will not be given effect. Having undertaken the duty to the public, which includes the obligation of reasonable care, such defendants are not free to rid themselves of their public obligation by contract, or by any other agreement. * * *"

*See also* Prosser, Law of Torts 442-44, § 68 (4th ed 1971); 2 Harper and James, The Law of Torts 1186, § 21.6 (1956); 15 Williston on Contracts 154, 159, § 1751 (3d ed Jaeger 1972); and Annot., 175 ALR 8, 110-13 (1948).

Banks, like common carriers and utility companies, perform an important public service and, for that very reason, are subject to state and federal regulation.[2] This court has previously recognized that both the safe deposit and the special "deposit" business of a bank are integral parts of the business of banking with the bank as a bailee. *Bank of California v. Portland,* 157 Or 203, 208, 210, 69 P2d 273, 115 ALR 676 (1937). We believe that this includes the "night depository" business of a bank and that in the conduct of such business the bank may not "contract away" liability for the negligence of its own employees.[3]

---

[2] *See Thomas v. First Nat. Bank of Scranton,* 376 Pa 181, 101 A2d 910, 912 (1954).

[3] The concurring opinion states that contracts between business concerns are not contracts of adhesion "in the absence of evidence of unusual circumstances" and that "the merchants' need for a business service is not an 'unusual circumstance' which would justify depriving banks of their freedom to bargain for immunity from liability."

We question whether a "merchant's need for a business service" is a

For cases holding banks to be liable under facts similar to the facts of this case, *see Phillips Home Furnishings, Inc. v. Continental Bank,* 231 Pa Super 174, 331 A2d 840 (1974),[4] and *Hy-Grade Oil Co. v. New Jersey Bank,* 138 NJ Super 112, 350 A2d 279 (1975). *See also Ramsey Outdoor Store v. Chase Manhattan Bank,* 169 NYS2d 772 (City Ct NY 1957), and *Bernstein v. Northwestern Nat. Bank in Philadelphia,* 157 Pa Super 73, 41 A2d 440 (1945). *But see Valley National Bank v. Tang,* 18 Ariz App 40, 499 P2d 991 (1972); *Central National Bank of Cleveland v. Gallagher,* 13 Ohio App 2d 115, 234 NE2d 524, 528 (1968); and *Kolt v. Cleveland Trust Co.,* 156 Ohio St 26, 99 NE2d 902 (1951).[5]

We recognize that in *Irish & Swartz* this court

proper factor for consideration in deciding whether a contract is one of adhesion. In any event, because this case was decided on the pleadings, it presents no such issue for decision at this time. It has been said, however, that "exculpatory" contracts may be contracts of adhesion. *See* 2 Harper and James, The Law of Torts 1186, § 21.6 (1956); Annot., 175 ALR 8, 112 (1948); and Kessler, Contracts of Adhesion—Some Thoughts About Freedom of Contracts, 43 Col L Rev 629, 631 (1943). *See also* Murray on Contracts 736, § 350 (1974), and Llewellyn, The Common Law Tradition: Deciding Appeals 362 (1960).

[4] Overruled on other grounds in *Phillips Home Furnishings, Inc. v. Continental Bank,* 467 Pa 43, 354 A2d 542 (1976), holding that the question of the validity of the exculpatory clause had not been properly presented for decision on appeal.

[5] Even if otherwise valid, it has been said that an exculpatory contract should be strictly construed so as not to include negligence by the bailee or employees unless it does so "in the clearest terms." 2 Harper and James, The Law of Torts 1187 n.7, § 21.6 (1956), quoting as follows from *Newbern v. Just,* 2 Car & P. 76, 172 Eng Rep 35 (1825):

"* * * [I]f the public were told that he [the bailee] would not be liable either for the negligence of himself or his servants, he would not have many persons trust him."

As stated by Prosser, Law of Torts 444, § 68 (4th ed 1971), in order for such a contract to be enforceable it is necessary that "the expressed terms of the agreement be applicable to the particular misconduct. * * *" *See also,* Restatement of Torts 566-67, § 496B, comment *d* (1965).

It has been suggested that this contract did not state in any "clear terms" that the bank would not be liable for negligence or theft by its own employees and did not include any "expressed terms" which were applicable to such conduct. Because, however, of the basis on which we decide this case, we need not also decide that question.

sustained the validity of an exculpatory clause under the facts and circumstances of that case. The basis for the exception recognized in *Irish & Swartz* from the usual rule that such a bailee cannot "contract away" liability for its own negligence was the "peculiar character" of such a bailment by reason of the exposure of the bank under the facts of that case to the possibility of "dishonest claims made by customers asserting that deposits were made" in bank "night depositories." See 220 Or at 377. As previously stated, the sole issue in that case was whether the deposit was "delivered" to the bank.

We believe, however, that the theory of "peculiar circumstances" has no proper application to the facts alleged in this case, in which defendant has admitted by its demurrer that the deposit was "delivered" into the "exclusive possession and control" of the bank and that the loss was the result of negligence by the bank's own employees. Under such facts, there are no "peculiar circumstances" requiring protection against a possible dishonest claim by a customer so as to provide a reason for an exception to the usual rule that a bailee for hire or for mutual benefit or a public bailee cannot "contract away" liability for its own negligence.

We held in *Irish & Swartz* (at 373) that the contract in that case, when "fairly construed, sets delivery at least at the point where the bag has actually entered the chute in the sense that it cannot thereafter be retrieved from the exterior of the depository." Insofar as such a depository agreement places the risk of loss on the customer up to that point it is valid and enforceable, as held in *Irish & Swartz.* Such protection would extend to a bag improperly placed in the depository or from the acts of some third person who might be able to extricate the bag from the depository.

In such a case, if the jury finds that plaintiff has failed to prove the bag was properly placed in the depository so as to actually enter the chute, the defendant bank would not be liable. On the other

hand, if the jury finds that the bag was properly placed in the depository so as to actually enter the chute in the sense that it could not thereafter be retrieved from the exterior of the depository the bank would then have the burden of explaining its failure to account for the bag and its contents.

It should be made clear, however, that the result of this decision is to hold that the rule as stated in *Irish & Swartz* with reference to the validity of such an exculpatory clause is limited in its application to relieve the bank from risk of loss only during the period prior to the point when the bag has been "delivered," so as to establish a relationship of bailor and bailee. Our holding, as previously stated, is that after that relationship has been established the bank cannot contract away liability for loss as the result of negligence or dishonesty by its own employees and has the burden to prove that any loss was not the result of such negligence or dishonesty.[6]

Because no such delivery had been made in *Irish & Swartz*, it was not necessary in that case to consider the application and validity of a rule under which the bank would be relieved of such liability despite the fact of such a delivery. To the extent that the rule as stated in *Irish & Swartz* is contrary to our holding in this case, that case is overruled.[7]

---

[6]It necessarily follows that we do not agree with the position as stated by the concurring opinion to the effect that even after the deposit bag has reached the "vault" at the foot of the "chute," the rule forbidding public bailees from "contracting away" liability for their own negligence should not apply because there is no "unique risk of loss" to the customer and because the "bailee does not know what he has been entrusted with." We also believe that a businessman who seeks to protect himself from theft by the use of a night depository may run as much "risk of loss" from theft as a traveler who uses the safe in a hotel. It is also not unusual for public bailees to accept responsibility for the contents of bags, suitcases, and boxes without knowledge of the contents or their value, although the amount of such liability is sometimes limited depending upon the "rate" charged for such service. *See also* 9 Williston on Contracts 906, § 1038A (3d ed Jaeger 1972).

[7]It is also to be noted that in *Irish & Swartz Stores v. First Nat'l Bk.,* 220 Or 362, 349 P2d 814 (1960), the validity of the exculpatory clause was

Again, and as previously stated, it is alleged by the complaint and admitted by the demurrer in this case that the plaintiff deposited the bag in the depository; that the bank had "exclusive" possession and control over the deposit and that the bank failed to exercise due care in the handling of the deposit. These allegations, in our opinion, were sufficient to allege a cause of action against the defendant. It follows that defendant's demurrer was properly overruled.

Because, however, the defendant bank in this case relied in good faith upon the rule as stated in *Irish & Swartz* in its demurrer and in declining to plead further after the overruling of that demurrer, we consider this to be an appropriate case in which the defendant should now be afforded an opportunity to file an answer to the complaint, in order that the case may be tried in the event that issue is then joined on allegations of fact. For other cases in which we have permitted such further pleading, *see Adams v. McMickle,* 176 Or 459, 467, 158 P2d 648 (1945), and *Hawkins v. Hawkins,* 264 Or 221, 241-42, 504 P2d 709 (1972), and cases cited therein.

For all of these reasons, the judgment of the trial court is set aside and the case is remanded for further proceedings in accordance with this opinion.

**O'CONNELL, J.,** specially concurring.

I concur in the result but disagree with the court's reasoning. The majority opinion holds that a bailment relationship is created at the time the deposit bag enters the vault and that the exculpatory clause is ineffective beyond that point. It relies upon the inability of a bailee for hire to exculpate by contract its

not an issue on appeal because the bank did not contend in that case that it was excused from liability by that clause. The sole issue in that case was whether the night deposit was "delivered" by the plaintiff to the bank and whether the trial court erred in its instruction to the jury on the question of "delivery." 220 Or at 367, 370-71.

liability for negligence where the bailee is "charged with a duty of public service."

In the recent case of *K-Lines, Inc. v. Roberts Motor Co.,* 273 Or 242, 541 P2d 1378 (1975), we upheld a limitation of liability provision contained in a sales agreement between two business concerns. In so doing, we recognized that such agreements will be carefully scrutinized to see if a disparity of bargaining power exists. We held, however

> "That one party may possess greater financial resources than the other is not proof that such a disparity of bargaining power exists that a limitation of liability provisions should be voided. * * * * *
>
> "When the parties are business concerns dealing in a commercial setting and entering into an unambiguous agreement with terms commonly used in commercial transactions, the contract will not be deemed a contract of adhesion in the absence of evidence of unusual circumstances." (541 P2d at 1384.)

I recognize that night depositories serve an important need in the commercial world. But the merchants' need for a business service is not an "unusual circumstances" which would justify depriving banks of their freedom to bargain for immunity from liability. It must be shown that the need is so compelling that the burden of filling it through some means other than the bank's services would be inimical to societal interests. I do not regard the need for night depository service as having this compelling force. Safes of various sizes and complexities, capable of providing a relatively safe place of deposit on the merchants' premises are available. These devices being available, it cannot be said that the need to use the bank's night depository service is so great that the merchant cannot freely bargain with the bank. The parties, being in a position to bargain at arm's length, should have a right to limit their liability within reasonable bounds. It may be that in some situations exculpatory agreements may be contracts of adhesion. Contrary to the majority's dictum, however, the need for goods or

services is a key factor in determining whether the parties have voluntarily contracted and whether the resulting bargain is one of adhesion.[1]

Absent an adhesion contract or inequality of bargaining power, the rationale of the majority is that because the bank is a public entity, it cannot by contract limit its liability in a bailment relationship. This analysis is faulty.

I would concede that many of the functions of a bank are such that fairness to the customers requires strict scrutiny of the bank's practices and the imposition of rules safeguarding the customers' interests. In this respect, banks are "public" institutions and like other public bailees require greater control than purely private bailees. A part of that necessary control is the restriction on contracting against liability. But the need for such a restriction exists only where the service performed involves a special risk of loss to the customer, as in the case of a common carrier, or innkeeper,[2] or where the public need for the service is great and the bailor is forced to bargain from a position of weakness, or where the bailee performs a service as a condition of a state sanctioned monopoly, as in the case of public utilities. The recognition of these exceptional liabilities on the part of bailees having a public character does not mean that in *every* contractual relationship the bailee must be restrained from limiting its liability. This was recognized in *Central National Bank of Cleveland v. Gallagher,* 13 Ohio App2d 115, 120, 234 NE2d 524, 528 (1968), where the court, in holding that an agreement protected the bank from liability for negligently paying the proceeds

---

[1] *Cf.,* Javins v. First Nat. Realty Corp., 428 F2d 1071, 1079 (D.C. Cir 1970).

[2] A larger risk of loss through theft apparently contributed to the special treatment of innkeepers and common carriers at common law as contrasted with the ordinary negligence liability of a bailee. *See* Crapo v. Rockwell, 48 Misc Rep 1, 94 NYS 1122, 1123 (1905); Brown on Personal Property § 12.15, pp. 375-76 (3d ed 1975) (innkeeper liability); Beale, *The Carrier's Liability: Its History,* 11 Harv L Rev 158 (1897), and Arterburn, *The Early Liability of a Bailee,* 25 Mich L Rev 479 (1927) (carriers).

of a savings account without presentment of the passbook, said:

> "The question as to whether banks are to be regarded as ordinary citizens or as public service institutions, similar to public utilities, probably can be answered only by referring to the particular capacity in which banks are utilized."[3]

Plaintiff can point to no unique risk of loss in a night depository arrangement that would compel the requirement of a special rule here as was created at common law for innkeepers and common carriers. In any event, it is unclear why, in the providing of a special service to a limited group of commercial customers, the bank is "charged with a duty of public service."

The majority opinion does not explain what is necessary to constitute a "public bailee"; it seems to imply that any business with powerful bargaining strength qualifies. This factor should not be controlling unless the bailees bargaining advantage calls for the application of the principles of adhesion contracts and unconscionability, which, as I have pointed out, are not present here.

Further, the traditional rule which restricts the ability of public bailees to exculpate liability by contract should not be applied where the bailee does not know what he has been entrusted with. Normally, a bailee is aware of the circumstances surrounding the storage of bailed goods as well as the value of any entrusted articles. And usually, the bailor, after transferring possession of the goods to the bailee, is unaware of the disposition made of his property. For this reason, the bailor is entitled to a presumption of negligence on the part of the bailee if the goods are not

---

[3] *See also,* So. Pac. Co. v. Morrison-Knudsen Co., 216 Or 398, 419, 338 P2d 665 (1959), holding that "a railway company acting in a private role and not as a common carrier may legally contract for indemnification against the consequences of its own negligence not criminal or wanton in nature" and Georges v. Pacific Telephone and Telegraph Co., 184 F Supp 571 (D Or 1960) (limitation of liability from negligence in the preparation of advertisement in the yellow pages of a telephone directory upheld).

returned upon demand. And for the same reason, it may be unreasonable to allow a public bailee to disclaim responsibility for stored goods by an exculpatory clause. But where the bailee has no knowledge of the value or contents of stored goods *or even that goods have been entrusted,* as here, a different rule is called for. It is not unreasonable to allow in such a situation a contractual provision assigning the risk of loss to the bailor in order to guard against fictitious claims of delivery or loss from causes beyond the control of the bailee.

There is a point, however, at which the bank would have such control over the contents of the bag that it would no longer be permitted to assert the protection of the exculpatory clause. This would be either because the relationship of the bank and the depositor changed from a bailment to that of debtor and creditor respectively, or for the reason that the bank, having begun the processing of the deposit, is subject to the same rule of strict liability referred to above, which is imposed with respect to other bank practices required to safeguard the customer's interest.[4] The complaint is broad enough to permit proof of the bank's control in the manner just mentioned. For this reason, I concur in the result reached by the majority opinion but I dissent from the reasoning.

Denecke, C. J. and Bryson, J., join in this opinion.

---

[4]The ability of the bank to exculpate itself where it has actual possession and control over the contents of the bag was not decided in Irish & Swartz Stores v. First Nat'l. Bank, 220 Or 362, 377, 349 P2d 814 (1960). There we said, "Where the bailment contract provides that the deposit bag is to be opened out of the presence of the customer, a different rule may be called for * * *."