I. Stanley Rosenthal, J.
Plaintiff instituted this action for conversion. Plaintiff’s case was predicated upon the testimony of its night manager who testified that in the early morning of October 11, 1967, following the closing of the bowling alley of *338 which he was night manager, located at 500 Old Bethpage Road, Plainview, New York, he drove to the defendant’s branch bank located on Manetto Hill Road, in Plainview, and placed a depository bag No. 159 furnished by the defendant into the defendant’s night depository. He testified that he had previously checked the contents of the bag with the deposit slips enclosed therewith and that the sum of $1,199.27 in cash was deposited along with the sum of $199.74 in checks, making a total of $1,399.01, deposited in the night depository. The deposits aforesaid had been checked by plaintiff’s manager against the deposit slips and found to tally correctly at the time that the plaintiff’s manager placed the aforesaid cash and check items in the depository bag, which he testified he placed into the defendant’s night depository.
It is undisputed that the plaintiff’s account was never credited for the deposit although demand had been made. Subsequently, plaintiff succeeded in getting duplicate checks, which reduced the amount for which judgment is being sought herein to the sum of $1,244.36. Mr. Nastvogel could not recall whether he was accompanied by anyone at the time that he deposited the bag into the defendant’s night depository.
The testimony adduced on behalf of the defendant disclosed the procedure followed by it each morning in connection with the opening of the night depository vault and the crediting of the various accounts upon receipts of the deposits, which was followed on the morning of October 11,1967. That on the morning after the alleged deposit both the manager of the defendant’s bank and the head teller removed the contents of the night depository vault as soon as the main vault was opened and the security signal had been registered. The procedure that was followed was that the manager had the combination to the night depository which had to be used in conjunction with a key in the possession of the head teller. It was impossible for any one individual to open the night depository. After the night depository was opened, all bags found in the depository were listed on a card devised and used for that purpose with a date, and signed for by both officers. The card was admitted in evidence as defendant’s Exhibit D.
Testimony on the part of the defendant disclosed that it had never received the depository bag containing the moneys involved herein. Introduced into evidence were the night depository service agreement dated October 21, 1963, (defendant’s Exhibit A in evidence), Defendant’s Exhibit B in evidence consisting of a night depository service agreement likewise dated October 21, 1963, and Defendant’s Exhibit 0 in evidence con *339 sisting of a resolution adopted by the corporate plaintiff in connection with its use of the night depository safe of the defendant bank.
New York Jurisprudence (vol. 5, Banks and Trust Companies, § 209): “ While money on deposit in a bank is commonly considered to be property of the depositor, the relationship in fact between him and the bank is that of debtor and creditor * * *
The money deposited with the bank belongs to the bank and is not the property of the depositor. * * * Again, the relationship of a bank to a depositor is that of debtor and creditor and not that of a bailor and bailee ”.
New York Jurisprudence (vol. 5, Banks and Trust Companies, § 214): “ However, the view has been taken, particularly as to night deposits, that the relation of debtor and creditor between the bank and the depositor does not arise until the official crediting of the deposit to the customer’s account in the regular banking hours. In the meantime, the bank is a mere bailee. It has been held that the bank may be held liable as a bailee for the negligent loss of a night deposit, in the absence of a contract placing the risk upon the depositor.”
New York Jurisprudence (vol. 5, Banks and Trust Companies, § 262): ‘ ‘ the general rule of bailments, that when a bailee exercises that degree of care and diligence required by law of his class of bailees, he is discharged of liability, although the thing bailed is lost, destroyed, or stolen, is fully applicable ”.
New York Jurisprudence (vol. 5, Bailment, § 44): “As a general rule, the terms, express or implied, of the contract of bailment determine the rights, duties, and liabilities as between the parties, and, of course, either party may impose on the other such terms as they may agree upon.”
Subdivision 1 of section 96 of the Banking Law sets forth the general power of banks and states: ‘ ‘ and receive deposits of moneys, securities or other personal property upon such terms as the bank * * * shall prescribe ”.
An examination of the foregoing authorities leads to the inescapable conclusion firstly, that the relationship between the plaintiff and the defendant in this particular case before the court is that of a bailor and bailee and secondly, that the relationship between the two is defined and is to be determined by their own contract.
Defendant’s Exhibit A, the night depository service agreement, states that the debtor-creditor relationship shall not arise by reason of the night depository facilities and that no deposit shall exist until a credit is made in depositor’s account and then *340 only to the amount of such credit, that the bank would not be liable for loss, destruction or disappearance, or failure to find the money bag allegedly placed in the depository. Defendant’s Exhibit B states that the privilege of using the depository service is gratuitous and at the sole risk of the depositor. The agreements between the parties appear to be crystal clear. What effect, if any, the same has concerning the question of negligence is not before the court. The plaintiff in the instant case sought to recover for conversion.
Melnick v. Kukla (228 App. Div. 321, 323, 324): “ Conversion is ‘ an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner ’s rights. ’ (Bouvier Law Dict. (Rawle’s 3d Rev.) 669.) While money may be the subject of conversion, the same as any chattel, in order to entitle the plaintiff to recover in trover, it must appear that $250 of the identical money paid to defendant by Mrs. Melnick actually belonged to and was the property of the plaintiff, and that the defendant had converted this money to his own use. * * *
‘ ‘ Plaintiff has elected to sue in tort. * * * The character of the action must he determined by the pleadings.”
Salt Springs Nat. Bank v. Wheeler (48 N. Y. 492, 495): “To authorize the action of trover, two things are necessary:
1. Property in the plaintiff with a right of possession; and
2. A conversion by the defendant of the thing to his own use. This conversion consists of the appropriation of the thing to the party’s own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in defiance of the plaintiff’s right, or in withholding it under a claim of title. * * * The accidental loss or destruction of an article by one lawfully in its possession has never been held to be a conversion.”
In Meise v. Wachtel (54 Misc. 549, 549-550), the plaintiff delivered a horse to the defendant, a prospective purchaser, for preliminary trial. During the period of trial the horse was accidentally killed. The Appellate Term held: “ It was conceded that plaintiff delivered the mare to the defendant so that no unlawful taking was established; and the undisputed evidence is that defendant was neither in possession of the property at the time of the demand nor that he had voluntarily, fraudulently or intentionally parted with the same, and constantly could not he chargeable with unlawful detention. Sinnot v. Feiock, 165 N. Y. 444. The accidental destruction of the property while lawfully in the possession of a defendant is not a conversion; *341 it may constitute negligence. ‘ The failure to deliver that which is not in being and cannot be delivered furnishes no evidence of an appropriation.’ Salt Springs Nat. Bank v. Wheeler, 48 N. Y. 492. * * * The record conclusively shows that the question of negligence was not litigated ’ ’.
The evidence introduced in the instant case at the trial indicated that the plaintiff allegedly placed the deposit bag in the chute of defendant’s night depository thus alleging delivery, so that no unlawful taking by the defendant has been established, nor does the evidence establish that the defendant was in possession at the time of demand or that the bank fraudulently parted with the money so as to charge it was unlawfully detained. At most the testimony reveals a mysterious or accidental loss of the property but not a conversion. The defendant may be guilty of negligence and the plaintiff may be guilty of contributory negligence in not seeing that the money bag reached the bottom of the vault, but in any event, the record is devoid of establishing negligence and the question of negligence was not litigated. The action should be determined by the pleadings and that is for conversion.
Carmody-Wait New York Practice (vol. 3, § 14:19. Sufficiency) : ‘1 The sufficiency of a demand and refusal as evidence of conversion is a question generally of substantive law * * * To render a demand and refusal equivalent to direct proof of a conversion, it must appear that the defendant had the actual possession at the time of the demand and thus had power to comply with it * * * Where property has never come into the actual possession of the defendant, a demand and refusal are not evidence of a conversion.”
After evaluating the testimony offered at the trial, the court entertains grave doubts whether or not the deposit bag ever came into possession of the defendant.
New York Jurisprudence (vol. 10, Conversion, § 26): “ There must be some positive tortious act by the defendant, something more than the mere intent to do something, to constitute a conversion. * * * Mere nonfeasance, even though it is a neglect of a legal duty, as in the case of a bailee, is ordinarily insufficient to support the maintenance of an action for conversion. Nor may a conversion be predicated upon the fact alone that property was stolen or taken from defendant, or that it was accidentally lost or injured. * * * But one who accepts money as bailee for safekeeping or other purposes is guilty of conversion so as to render him absolutely liable in the event of theft or embezzle *342 ment, even without his fault, if he commingles the money with his own.”
There is not a scintilla of evidence in the record to indicate that the defendant commingled the funds sued upon herein.
The court concludes that the defendant used the ordinary care required of a bailee and is not liable to the plaintiff.
Judgment may be submitted accordingly on notice dismissing the complaint.