OPINION OF THE COURT
Eugene Nardelli, J.
This is an action in negligence brought by Ms. Audrey *143 McEvans against Citibank, N. A. It was commenced as a small claims case, but tried in the pro se part.
Ms. McEvans, a "cash machine” customer of the bank, made a deposit of $600, consisting of one $100 bill and ten $50 bills, at Citibank, La Guardia Place branch, on Thursday, January 5, 1978, at 7:00 in the evening. In the absence of a regular deposit envelope, the cash deposit was placed in a letter size envelope provided by the bank for such an eventuality. However, the plaintiff forgot to include a deposit slip therein.
After performing the necessary operations of inserting her bank card into the automated machine teller and punching the appropriate code, Ms. McEvans depressed a button requesting a machine receipt. The machine accepted the deposit but failed to return a receipt. The parties stipulate that at the time of the transaction, the receipt portion of the machine was not functioning.
Four days later, plaintiff telephoned the La Guardia Place branch office and informed them of the malfunction and of her prior deposit.
On the following evening, January 10, 1978, while attempting to make a cash withdrawal, plaintiff was informed by the automated machine teller that her account was overdrawn. Plaintiff then personally inquired at the bank and was informed that no $600 deposit had ever been credited to her account. Further investigation revealed that the only January cash deposit not accompanied by a deposit slip contained $350, not the $600 claimed by plaintiff. Moreover, since the receipt mechanism was out of order at the time of the deposit, no record was made of plaintiff’s depositor account number on the envelope.
At trial, defendant called as its first witness the manager of the branch. He testified that under the bank’s procedures, the envelopes, when put into the machine, go into a two-dial safe. The combination to unlock the first dial is accessible to a representative from the operations department, i.e., a teller; the combination necessary to unlock the second dial is known by one of the management personnel. Hence, at least two persons are needed to open the safe. Once the safe is opened, a key (in possession of management) is required to open the inner box which actually contains the envelopes. The envelopes are then transported by both representatives to a counter in the head teller area to be opened and counted. The procedure for opening and counting the contents of the enve *144 lopes also requires two persons: (1) a teller who actually opens the envelopes and counts the contents; and (2) a witness-observer who may be either another teller or a member of management.
Citibank’s express policy, which prominently appears on its deposit envelopes and account literature, reads: "Your deposits and payments are accepted subject to verification and will be opened in the presence of two persons for your protection and ours. It is understood and agreed that final credit on currency is subject to the Bank’s count.”
The usual legal relationship between a bank and its depositor is one of debtor and creditor in that there is a contractual obligation to pay money on demand. However, the view has been taken, particularly as to night deposits, that the relation of debtor and creditor between the bank and the depositor does not arise until the official crediting of the deposit to the customer’s account during regular banking hours. (See 5A NY Jur, Banks and Trust Companies, § 259.) Until verification and credit of the deposit, the relationship between the depositor and the bank is that of bailor-bailee, and the bailment amounts to a physical custody for safekeeping, as if the money were locked in a safe-deposit box. (See Bowling Corp. of Plainview v Long Is. Nat. Bank, 57 Misc 2d 337.)
In New York, the relationship between a bank and its night depository customer is an ordinary bailment for mutual benefit with respect to money placed in the night depository facility. It devolves upon the bailee to exercise ordinary or reasonable care and diligence in keeping and safeguarding the bailor’s property. The bailee is answerable for loss resulting from its negligence or lack of ordinary care.
Though this court has been unable to find legal precedents dealing specifically with automated banking machine deposits in the context set forth above, there are cases dealing with night depositories which invite comparison.* (See Ann. 77 *145 ALR3d 597.) Additionally, we have found a case with similar facts in a sister jurisdiction.
In Bernstein v Northwestern Nat. Bank (157 Pa Super 73), a sum placed in the bank’s night depository was inexplicably lost. The court held that, in the absence of an express contract making the deposit a general deposit, thereby creating a debtor-creditor relationship between bank and depositor, the bank must take some steps evidencing its acceptance of the deposit such as crediting the depositor’s account. Absent such steps, liability for loss of the deposit would be based on the bank’s negligence as a bailee. Since the bank offered night service not as a gratuity, but for its benefit to retain and further its business, there existed a bailment for mutual benefit requiring ordinary care by the bank.
The court further held that plaintiff had proved that he made the deposit, thereupon the burden shifted to the bank to show it used ordinary care in transferring, counting and crediting the money to the proper account. This the defendant failed to do since in the morning, one, rather than the customary two tellers, carried the night deposits to the teller’s cage.
Here, plaintiff made out her cause of action in negligence against Citibank as a bailee by her own testimony bolstered by that of a witness who testified that she observed the physical insertion of $600 cash into the envelope and the actual placement of that envelope into the machine.
Citibank’s second witness, a teller, admitted that (1) the deposit envelopes in question were opened by both her and a head teller violating Citibank’s procedures that required one person to open and the second to witness and observe the other; and (2) that the envelopes were neither constantly under her control nor under her uninterrupted observation.
The court concludes that Citibank failed to show the exercise of ordinary or reasonable care, in that it failed to follow its own established and published procedures.
This court does not hold that all cash deposits claimed to be placed in an automated banking device are presumed accurate until the claim is satisfactorily rebutted by the bank. However, here the bank could have better protected itself and more importantly, its customer, by following its two person verification procedure or by providing some form of recording surveillance device in the teller’s cage which could, at a later time, show and corroborate every step of the transaction from the opening of the lockbox and the unsealing of the envelopes *146 to the making of the actual count and crediting of the account. It seems incongruous that a device so successfully used by the bank to identify and apprehend bank robbers cannot also be used to protect the bank from possible employee thefts or depositors’ dishonest claims.
Accordingly, the court finds that the plaintiff has sustained her burden by a fair preponderance of the credible evidence and grants judgment in the amount of $600 against the defendant.

 Many such cases deal with the question of whether the bank can insulate itself from all liability by appropriate exculpatory language in the night depository agreement, and whether such language is either against public policy or proscribed by subdivision (1) of section 4-103 of the Uniform Commercial Code, which forbids a bank’s disclaimer of responsibility for its lack of good faith or failure to use ordinary care — a question not presented by the facts herein; no depositor’s agreement was put in evidence and the policy statement contained on the deposit envelope cannot be read as a clear disclaimer of liability.