OPINION OF THE COURT
Edward H. Lehner, J.
The interesting issue to be resolved herein, on which there is surprisingly no appellate authority in this State and division in the few cases decided elsewhere, is where to place the loss in a situation where money is placed in a bank’s night depository and inexplicably not found by the bank.
FACTS
This is an action to recover $11,084.50 which plaintiffs claim is the loss sustained when a deposit made by Sun-crest Pharmacal Corp. (Suncrest) in a night deposit vault of the defendant was not credited to its account.
The testimony of Mr. Weinraub, president of Suncrest, was that: on Friday, June 16, 1978 at about 7:00 p.m. he placed a paper bag containing two of the bank’s cloth deposit bags in a night depository; one of the bags contained 850 $1 bills and the other had cash and checks totaling $19,191.52; that before leaving he checked to see that the bag did in fact go down the chute; the deposit slip for both bags was contained in the one that contained the $850; that he was advised by the bank the following *602 Monday that it had only received one of the two deposit bags; that thereafter Suncrest was able to have payment stopped on all of the checks in the missing bag on which it was the payee, but was unable to do so on any of the checks payable to others and indorsed over to it because it had no record of the makers; the total lost cash and third-party checks total $11,084.50; that Suncrest received $3,000 from its insurer, plaintiff Employers Insurance of Wausau, and issued a receipt whereby it subrogated its claim against defendant to the extent of such payment.
An officer of defendant described the procedure employed by the bank in opening the vault and plaintiff conceded that no negligence was established with respect to the bank’s procedure in handling night deposits.
The agreement between Suncrest and defendant provides that the permission to use the night depository is a “privilege” and is “gratuitous and the exercise of that privilege will be at the sole risk” of Suncrest.
ARGUMENT
Although plaintiffs have conceded that no negligence was established at trial, they maintain that merely proving that the money was in fact placed in -the vault is sufficient to entitle them to recover. Defendant on the other hand, while conceding that the exculpatory clause in the agreement cannot prevent recovery for a negligent loss of the deposit, argues that unless negligence is established plaintiff cannot recover as a matter of law and by reason of contract.
BAILOR-BAILEE RELATIONSHIP
Until a deposit bag is opened and the contents credited to the depositor’s account, the relationship between the bank and its night depository customer is that of bailor and bailee and only ordinary care is required of the bank in operating the facility as the bailment is one of mutual benefit. (Roscoe v Central Nat. Bank of Canajoharie, 96 Misc 2d 517; McEvans v Citibank, 96 Misc 2d 142; Bowling Corp. of Plainview v Long Is. Nat. Bank, 57 Misc 2d 337; see Bank’s Liability — Night Depository Service, Ann., 77 ALR3d 597.)
*603 However, plaintiff must first establish that a bailment was in fact created by a proper deposit. For the trier of facts to determine whether a bailment was created many factors should be taken into account, such as the depositor’s prior deposit history, method of depositing, his over-all character and corroboration. Suncrest has been a long-time customer of the bank, a frequent user of its night depository service and has never registered any complaints about the facility until now. Its method of depositing was as precautionary and circumspect as possible. Mr. Weinraub’s testimony was, in part, corroborated by the foreman of Sun-crest, who accompanied him to the bank and saw him place a paper bag in the night depository, but was unable to testify with respect to its contents.
Observing Mr. Weinraub from the witness stand leads the court to find him a rather credible witness. The bank acknowledged that many customers will place the bank’s cloth deposit bag in a paper bag for security purposes in order to conceal possession. The bank officer testified that after the cloth bags are removed from the vault each morning, any paper bags used are thrown on the floor and discarded. The bank’s supposition that Mr. Weinraub may not have checked to see that the deposit went down the chute is not a viable contention if the court believes (which it does) that both cloth bags were contained in the one paper bag, as the bank did receive one of the cloth bags. Finally, the fact that so many checks that had to be stopped were contained in the missing bag tends to lessen any concern that the claim is fraudulent.
In light of the above, the court finds that the aforesaid second bag containing cash and checks totaling $19,191.52 was in fact properly placed in the night depository vault in the paper bag with the other bag containing $850. When the paper bag entered the chute, a bailment was thereupon created. Although in the typical bailment there is personal delivery from the bailor to the bailee, here the bailment occurred upon delivery into a device under the exclusive care and control of the bank.
BURDEN OF PROOF
The finding of the creation of a bailment brings the court to the question of where the loss shall lie when neither *604 plaintiffs nor defendant alleged any wrongdoing by the other. It is difficult to impose a burden upon either party to demonstrate fault as the bank is never aware of a night deposit until the next morning when the vault is opened and the depositor is never present when the vault is opened.
The general rule is that when a bailee is unable to advance an adequate explanation for the failure to return property subject to a bailment, it is liable for the loss, but that if the bailee provides a sufficient explanation for the loss so as to raise an issue of fact, the bailor must then prove negligence. (I.C.C. Metals v Municipal Warehouse Co., 50 NY2d 657; Motors Ins. Corp. v American Garages, 98 Misc 2d 887 [App Term, 1st Dept]; Ellish v Airport Parking Co. of Amer., 42 AD2d 174.)
DISCUSSION
A review of New York law reveals only a few cases that touch on the issue before the court.
In Roscoe v Central Nat. Bank of Canajoharie (96 Misc 2d 517, supra), plaintiff was discharged by his employer when the defendant bank at first denied receiving a deposit of the employer’s funds which plaintiff claimed to have placed in defendant’s night depository. On a motion to dismiss, the court, in what is in essence dicta, stated (p 521) that it would be “sheer folly” to “permit unrestrained and unlimited suits against banks simply on the bare assertion of an individual that he made a deposit. Without subsequent discovery, there would be no way of actually knowing whether the claimed deposit was in fact made, and in such a situation, fraught with the limitless opportunities for fraud, banks should not be held answerable or liable.”
In Gramore Stores v Bankers Trust Co. (93 Misc 2d 112, 114), the court held that a bank “may not contract away its liability for negligence” and struck an affirmative defense based on an exculpatory provision similar to that executed herein.
As indicated above, Chemical Bank is not claiming exemption from liability for negligence, but rather is arguing that unless negligence or a conversion is established, the contract prohibits a recovery. In its brief it states: “The *605 bank has merely defined its liability to protect itself against fraudulent claims.” Since the gravamen of the complaint is both negligence and conversion, it is hard to see where the contract provision would apply unless defendant is seeking to distinguish between negligence established by conduct as opposed to a presumption thereof that might ensue from application of the rules of bailment. If such is defendant’s argument, the court cannot accept same. First, the court agrees with the holding in Gramore Stores (supra), that public policy would vitiate against a public institution such as a bank contracting away liability for its negligence. Second, such contracting “is not to be countenanced unless it is absolutely clear that such was the understanding.” (Howard v Handler Bros. & Winell, .279 App Div 72, 76, affd 303 NY 990.) Such an interpretation could not be garnered from an examination of the agreement herein.
Defendant cites Irish & Swartz Stores v First Nat. Bank of Eugene (220 Ore 362), where the court held that an exculpatory provision in a depository agreement similar to that herein was enforceable. However, to the extent such ruling provided for enforceability once delivery to the bank is made by the entry of the bag into the chute, such decision was expressly overturned in Real Good Food Store v First Nat. Bank of Ore. (276 Ore 1057). There the court held (p 1064) that if the trier of the facts “finds that the bag was properly placed in the depository so as to actually enter the chute in the sense that it could not thereafter be retrieved from the exterior of the depository the bank would then have the burden of explaining its failure to account for the bag and its contents.” The court went on to say that once delivery is established “the bank cannot contract away liability for loss as the result of negligence or dishonesty by its own employees and has the burden to prove that any loss was not the result of such negligence or dishonesty.”
In Vilner v Crocker Nat. Bank (89 Cal App 3d 732), a similar set of facts to those herein was presented with the bank arguing that proof that it exercised ordinary care met its conceded burden of explaining the failure to return the depositor’s bag. The court disagreed stating (p 737): “A *606 simple showing of the exercise of ordinary care is not a sufficient explanation. Something has gone terribly awry. There is no evidence that explains it but, as Thoreau reminds us, ‘Some circumstantial evidence is very strong, as when you find a trout in the milk.’ A general showing of prudence and caution will not do absent an explanation of the cause of the disappearance.”
In Bernstein v Northwestern Nat. Bank (157 Pa Super Ct 73, 78) the court upheld a charge that if the jury found that the deposit was made by the plaintiff, the burden then shifts to the bank to show that under “the particular circumstances in this particular case it used ordinary and reasonable care” (emphasis supplied) in seeing that the deposit was credited to plaintiff’s account.
Similar rulings can be found in Hy-Grade Oil Co. v New Jersey Bank (138 NJ Super 112) and Phillips Home Furnishings v Continental Bank (231 Pa Super Ct 174).
Contrary rulings, essentially based on the philosophy set forth in Roscoe v Central Nat. Bank of Canajoharie (96 Misc 2d 517, supra) of avoiding fraudulent suits against banks, may be found in Kolt v Cleveland Trust Co. (156 Ohio St 26) and Valley Nat. Bank of Ariz. v Tang (18 Ariz App 40).
This court believes that such philosophy is wrong. There is nothing in the law that requires corroboration in a civil suit and hence liability under all sorts of circumstances can be established solely on the testimony of the aggrieved party. For instance if a person claims he tripped as a result of a defective condition, he may recover against the landowner who may not have been present when the incident occurred and thus not be in a position to know whether the fall did in fact happen on his property. It is for the trier of facts to determine where credibility lies.
The court is acutely aware of the possibility of opening the floodgates to numerous fraudulent claims. But each and every claimant must first overcome the not insignificant threshold of demonstrating that a deposit was in fact made. Thereafter, the burden shifts to the bank to offer an explanation of how the loss occurred. Needless to say, requiring a bank to prove that it was not negligent in *607 handling a particular deposit it claims it did not receive is rather difficult. But in the case at bar, with a court finding that the deposit was made, the court can only presume that the loss thereafter occurred as a result of the negligence of or conversion by the bank’s employees. Possibly the second cloth bag was left in the paper bag that was thrown away, was dropped or even stolen. In any event, the exculpatory provision, which defendant concedes would not preclude a recovery for negligence or conversion, cannot therefore prohibit the imposition of liability.
Between the bank, that can offer no evidence with respect to how the deposit was made, and the depositor, who is in a similar position with respect to the opening of the bags, the loss should fall on the bank if it cannot explain what happened to the bag. The general rules of bailment referred to above require a bailee to explain a disappearance of property. Of course in the cases cited there was no dispute as to the delivery of the goods to the bailee. However, with the court’s finding of a deposit in a facility under the exclusive care and control of defendant, the same rules should apply. The excuse that the deposit was not received can' consequently be analogized to the position of the warehouse in I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657, supra), which when it was unable to return stored goods merely offered the supposition that they were stolen. The Court of Appeals held that such explanation was insufficient to shift the burden back to the bailor to establish the bailee’s fault and therefore allowed a recovery based on conversion to stand.
CONCLUSION
The defendant having failed to offer any explanation as to how the loss occurred is liable to the plaintiff Suncrest in the sum of $8,084.50, with interest from June 19,1978, and to plaintiff Employers Insurance Company of Wausau for $3,000, with interest from September 20, 1978.