OPINION OF THE COURT
Edward H. Lehner, J.
To withdraw funds from your Citibank account at any time all you need do is place your card in their machine, enter your secret code, and then push a button. So the advertisement goes. But, complains the plaintiff, on two occasions this was done, no money was received, and yet his account was charged. Thus the court is faced with another type of dispute between man and machine, for which no precedent has been found.
Plaintiff testified that on August 23, 1983, he sought to withdraw $100 from his checking account. When no money was dispensed from the machine after the necessary buttons were pushed, he reported the fact to a bank official who stated that the matter would be investigated. A few weeks later, on September 5, plaintiff took the requisite steps to make a $200 withdrawal. When no money appeared, he then repeated the process with the same result, which he thereupon reported to management. As a result of the foregoing plaintiff’s account showed one withdrawal of $100 and two of $200 (for a total of $500), which amount he seeks to recover in this action.
The witnesses employed in the branch of the bank where the machine involved was located testified that in examining it on the day after the first of the two occurrences they *29 found the account in balance, while on the latter date there was a cash overage of $90. They further indicated that, on the average, the cash machines were out of balance once or twice per week, but never for a sum in excess of $100.
Although no reported decision has been found dealing with this type of situation, McEvans v Citibank (96 Misc 2d 142) involved a somewhat analogous problem. There, a customer, who admitted failing to supply the bank with a deposit slip, claimed to have made a deposit by placing cash in an envelope in the cash machine. However, she received no credit because the bank denied receipt. The court ruled in favor of the customer, but only because it found the bank negligent in failing to follow its own publicized procedures of having one person open the deposit envelopes, with a second employee observing the opening.
In Employers Ins. v Chemical Bank (117 Misc 2d 601), the undersigned was confronted with a situation where the plaintiff claimed to have made a deposit in the night depository for which the bank had no record. Believing the testimony of the plaintiff’s witness, judgment was rendered in its favor through application of the rules of bailment. (See, also, Judd v Citibank, 107 Misc 2d 526, and Ognibene v Citibank, 112 Misc 2d 219, where bank customers who were tricked into permitting others to use their bank cards were granted recovery.)
As indicated in the discussion in Employers Ins. v Chemical Bank (supra), a minority of the few courts in the Nation that have considered the question have declined to grant a recovery against a bank solely on the testimony of a customer that a deposit was made. This reluctance is based on the fear of fraudulent suits against these public institutions. The policy underlying this view is illustrated by the dicta in Roscoe v Central Nat. Bank (96 Misc 2d 517, 521), where it was said that it would be “sheer folly” to “permit unrestrained and unlimited suits against banks simply on the bare assertion of an individual that he made a deposit. Without subsequent discovery, there would be no way of actually knowing whether the claimed deposit was in fact made, and in such a situation, fraught with the limitless opportunities for fraud, banks should not be held answerable or liable.”
*30 However, the preferable majority view is to permit recovery where the court is convinced that the deposit was in fact made and the bank could not explain its absence. Although the bailment presumptions applicable to night deposit cases cannot be said to be applicable to the opposite situation at bar where the claim is that the withdrawal was not received, the cases are pertinent in their holdings that a court may give credence to testimony of an undocumented deposit. Similar to the night depository customer, who is not in a position to produce any documentary evidence to establish that he made the deposit, the cash machine customer can produce nothing to show that the money was not dispensed to him.
Here we are dealing with machines which defendant’s witnesses acknowledged were out of balance one or two nights a week (although not to the extent involved in this case). Such witnesses also stated their belief that at times a subsequent machine customer received money properly belonging to the prior user of the machine. Plaintiff was a rather credible witness who had no record of banking problems although he had used the machines numerous times.
Under the circumstances, the court holds that plaintiff established by a fair preponderance of the evidence that he did not receive the money for which he was charged as a result of the above-mentioned transactions. Therefore, he is entitled to judgment for $500, plus interest from September 5, 1983.
In so deciding the court is not unmindful of the possibility of fraudulent suits. However, this fear exists in many areas of the law and the history of jurisprudence has not indicated that courts have been unable to competently (although certainly not perfectly) deal with such challenges.