### UNITED STATES of America

v.

### Robert Eugene BEST, et al.

### No. 3–89–00183.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 7, 1990.

Robert Watson, Asst. U.S. Atty., Nashville, Tenn., for U.S.

Thomas Watson, Federal Public Defender, Nashville, Tenn., for Robert E. Best.

Robert L. Smith, Nashville, Tenn., for Ralph Richards.

William P. Purcell, III, Nashville, Tenn., for Jean Marie Richards.

### MEMORANDUM

HIGGINS, District Judge.

This Court is now called upon to determine whether the new Federal Bank Fraud statute applies to a novel variety of theft. It is alleged that the defendants stole a United States mailbox, disguised it and placed it on the premises of the Murfreesboro Road Branch of the Third National Bank. It is charged that they then broke the lock on the bank's regular night depository and posted a sign directing customers to place their night deposits in the disguised mailbox. Several customers of the bank were deceived by this stratagem and placed their money in the bogus "temporary depository." It is alleged that the thieves came back and retrieved the mailbox with its deposits. It is alleged that this theft occurred on the night of August 12–13, 1989.

On September 13, 1989, the United States Grand Jury for this district returned

an indictment charging these defendants with stealing a United States Postal Service Box, obstructing the passage of mail, conspiracy to do the foregoing and also to defraud a federally-insured bank of funds.

On December 4, 1989, defendants filed motions to dismiss (Docket Entry Nos. 36, 37 and 38), contending that so much of Count One of the indictment as alleged conspiracy to commit bank fraud failed to state an offense under the pertinent federal statute, 18 U.S.C. § 1344, since any funds stolen were stolen from the bank's customers rather than the bank itself.

The pertinent part of the statute states: (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a federally chartered or insured financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

 Obviously, the key question is whether the money placed in the fake depository by unsuspecting customers was "under the custody or control" of the bank for purposes of the statute. This inquiry proceeds against the backdrop of the time-honored rule that, unless Congressional intent to the contrary is plain, criminal statutes are to be strictly construed, with the accused receiving the benefit of any doubt as to his criminal liability. *E.g., Liparota v. U.S.*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985); *U.S. v. Waechter*, 771 F.2d 974, 978 (6th Cir.1985); *U.S. v. Birchfield*, 486 F.Supp. 137, 139 (M.D.Tenn.1980).

There is no reason to suppose that Congress foresaw the type of stratagem now before this Court. The legislative history of the statute points, rather, to concern that it *not* be given an expansive reading. The new § 1344 was enacted specifically to counteract *Williams v. U.S.*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), which

was perceived as placing unreasonable obstacles in the path of prosecutions for check-kiting. *U.S. v. Kucik*, 844 F.2d 493, 499 (7th Cir.1988). The Senate report on the bill stated that "[t]he offense ... is designed ... for the prosecution of frauds in which the *victims* are financial institutions that are federally created, controlled, or insured." S.Rep. No. 225, 98th Cong.2d Sess. at 377 (1983), reprinted in 1984 U.S. Code Cong. & Admin.News 3182, 3517 (emphasis added). The House Judiciary Committee added its belief

that while the additional activity that could thus be brought within the purview of the language might well be reprehensible, and probably should be criminal, due process and notice argue for prohibiting such conduct explicitly, rather than through court expansion of coverage.

H.R.Rep. No. 901, 98th Cong.2d Sess. at 4 (1984).

Not surprisingly, most of the cases construing the "custody or control" element of § 1344 have involved situations where the bank possessed or controlled the funds in the usual way. *E.g., U.S. v. Walker*, 871 F.2d 1298 (6th Cir.1989), *U.S. v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987); *U.S. v. Bales*, 813 F.2d 1289 (4th Cir.1987). Thus, these cases did not consider the unusual circumstances confronting the Court in the present case. The closest thing to the defendants' scheme in the judicial history of the statute came up in *U.S. v. Blackmon*, 839 F.2d 900 (2d Cir.1988). *Blackmon* involved two bank customers who fell for the well-known "pigeon drop" game,—i.e., they were tricked into withdrawing their money from the bank and giving it for "investment" purposes to some con artists who promptly decamped. The Second Circuit held that § 1344 did not apply, since the money was the victims' own and was taken from them directly, rather than from the bank's custody. *Blackmon*, 839 F.2d at 905.

By this reasoning, § 1344 has even less application to the present facts, under which the bank never had real control of the funds at all. Depositing funds in actual night depositories has been held to cre-

ate an ordinary bailment. *E.g., Porter v. Citibank,* 123 Misc.2d 28, 472 N.Y.S.2d 582, 583 (N.Y.Co.Civ.Ct.1984); *Hygrade Oil Co. v. New Jersey Bank,* 138 N.J.Super. 112, 350 A.2d 279, 281 (1975); cf. *Kolt v. Cleveland Trust Co.,* 156 Ohio St. 26, 99 N.E.2d 902, 904 (1951) (liability for bailed funds can be disclaimed by agreement). However, in such a case there must be an acceptance of the property. In the present case, there was obviously no actual acceptance of the money by the bank. Nor is this Court aware of any case holding that merely leaving property on the bank's premises makes the bank a constructive bailee. It might be otherwise if the erroneous deposit had been brought about by some negligence on the bank's part, but that is not the situation. Rather, the customers' mistake was caused by the criminal act of third parties who deceived them with a false depository.

In short, the alleged conduct of the defendants, though worthy of all condemnation, was not made a federal offense by § 1344. This, of course, does not preclude the prosecution of these defendants under the appropriate state laws.

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum contemporaneously filed, that portion of Count One of the Indictment alleging conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344 is dismissed.

It is so ORDERED.